**ATORIE AIR, INC., Plaintiff–Appellant,**

**v.**

**FEDERAL   AVIATION   ADMINISTRATION, OF THE UNITED STATES DEPARTMENT   OF   TRANSPORTATION, et al., Defendants,**

**Roger Knight, Etc., et al.,
Defendants–Appellees.**

**No. 90–8186.**

United States Court of Appeals,
Fifth Circuit.

Sept. 30, 1991.

Rehearing Denied Oct. 30, 1991.

Ronald F. Ederer, U.S. Atty., El Paso, Stanley M. Serwatka, Mollie Crosby, Asst. U.S. Attys., for Knight, et al.

Catherine L. Fisk, Barbara L. Herwig, Richard Olderman, Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., for Federal Aviation Admin.

Susan Larsen, Malcolm McGregor, El Paso, Tex., for Atorie.

Before CLARK, Chief Judge, GOLDBERG and GARWOOD, Circuit Judges.

CLARK, Chief Judge:

Atorie Air, Inc. (Atorie), filed this action against the United States, the Federal Aviation Administration (FAA), and several

FAA employees in their official and individual capacities, seeking recovery for the loss of its business due to acts and omissions of the defendants. The district court dismissed several claims and defendants prior to trial. At the conclusion of trial, the district court entered judgment in favor of the remaining defendants. We affirm.

I

### A. The Dispute

Atorie is a Texas company which engaged in an air cargo transport business. On March 3, 1986, one of its aircraft made a forced landing while on a scheduled cargo flight over New Mexico. Investigation by the National Transportation Safety Board (NTSB) revealed that one engine had failed, another had partially failed, the landing gear had collapsed, and records on the aircraft and engines were not properly maintained.

By letter of March 12, Dorvin Hagen, a principal operations inspector of the FAA, advised Atorie that it was in violation of federal aviation safety regulations and could have the certificates necessary to its operation revoked. Hagen cited Atorie's high turnover of flight crew personnel as a "continuing problem" justifying a concern that Atorie did not have sufficient management or instructor personnel to meet operation and training requirements. On April 1, Hagen met with Pat Madera, Atorie's chairman of the board, to discuss problems at Atorie.

On April 5, another Atorie aircraft made a forced landing near El Paso. The NTSB investigation again determined that an engine had failed and the aircraft's records had not been properly maintained. During the investigation, Atorie's president, Ed Scott, acknowledged there had been sixteen engine failures attributable to poor overhauls in the past twelve months, as well as four forced landings which resulted in aircraft damage over a forty-day period.

By letter of April 24, Hagen advised Atorie of what the FAA perceived to be deficiencies in Atorie's operations, and that certain changes in personnel, management, and maintenance must be made by May 5, or it would take action to suspend Atorie's certificates. Hagen met with Scott on April 30 to clarify the FAA's concerns. On May 5, the FAA sent a maintenance inspection team to Atorie's El Paso office.

Thomas Walenta is a flight standards manager for the FAA, and Keith Runyan is an inspector. Following the inspection, Hagen, Walenta, and Runyan briefed John Curry, the FAA's associate regional counsel, on May 7 about Atorie's problems. Curry consulted with his immediate supervisor and with the FAA's Office of Chief Counsel in Washington, D.C., regarding a certificate revocation. Curry was specifically authorized to issue an emergency certificate revocation order. See 49 U.S.C. § 1429(a); 14 C.F.R. § 121.53(c). While drafting this order, a third Atorie plane went down on May 9 near Las Vegas. Curry determined it was necessary to ask Atorie immediately to surrender its certificates voluntarily. See 14 C.F.R. § 121.-53(d).

Curry called a meeting with Ed Scott and Atorie's counsel on Saturday, May 10. Atorie's counsel included Alan Zvolanek, a former FAA attorney retained for purposes of this meeting, who was familiar with applicable FAA statutes and regulations. Atorie voluntarily surrendered its certificates at the conclusion of this meeting. Zvolanek memorialized the agreement reached in a May 10 letter to Curry. The substance of this letter was that Atorie's surrender of its certificates was based on the FAA's agreement to return them immediately upon demonstration of compliance with FAA regulations. The letter further provided that when aircraft and necessary crew records were ready, the FAA would immediately inspect them. Atorie's stated intention was to be ready to fly its routes on Monday, May 12, 1986.

On the afternoon of May 12, Atorie advised the FAA office in Albuquerque it was ready for inspection in El Paso. Because it was too late in the day to fly officials from Albuquerque, the FAA offered to perform the inspection on the next day. Instead of agreeing to this offer, Atorie immediately

flew its records to Albuquerque. No inspection occurred, but the parties dispute the reasons why. Atorie claims that the FAA would not look at the records, but instead indicated it would start a new, massive inspection before recertifying Atorie. The FAA claims that, by consent, the inspection was postponed until May 15, and on that day, Atorie stated it was not ready for inspection. The FAA inspection team found that Atorie's erroneous record-keeping continued to violate FAA regulations.

The FAA asserts it attempted to allow Atorie to cure its problems, but still found unaddressed deficiencies on May 28, June 3, and on into late June. Atorie was recertified on July 2 and 3, 1986, and its certificates were returned. By that time, Atorie had allegedly lost all of its contracts.

### B. Proceedings Below

Atorie filed suit against the United States, the FAA, and the following FAA personnel in their official and individual capacities: Roger Knight, acting regional director; Keith Runyan, inspector; Dorvin Hagen, principal operations inspector; Thomas Walenta, flight standards manager; and John Curry, associate regional counsel. Atorie sought damages under the Federal Tort Claims Act (FTCA) for misrepresentation and tortious interference with contractual relations. Atorie also sought recovery for deprivation of substantive and procedural due process under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

On defendants' motion, the district court dismissed the FTCA claims for lack of subject matter jurisdiction. Finding Atorie's *Bivens* claim to be purely procedural, the district court *sua sponte* dismissed the substantive due process claim as to all defendants. It also dismissed the procedural due process claim as against the United States, the FAA, and the FAA personnel in their official capacities. However, the district court ruled that Atorie's complaint stated a cause of action for violations of procedural due process against the FAA personnel in their individual capacities.

A jury tried the procedural due process claim. At the close of Atorie's case, the district court directed a verdict in favor of Knight, Runyan, and Walenta for lack of evidence. The jury found that Hagen and Curry had not acted in good faith and had deprived Atorie of due process, but found that Atorie waived its procedural due process rights. The district court adopted the jury's findings of fact. Additionally, the district court held that any violation of procedural due process was also waived as a matter of law, finding that Atorie had foregone its right to judicial review under 49 U.S.C. § 1486. The district court entered judgment against Atorie.

## II

Atorie asserts the district court erred in dismissing its FTCA and substantive due process claims. Atorie also argues that the jury, as a matter of fact, and the district court, as a matter of law, erred in finding a waiver of procedural due process rights.

### A. The FTCA Claim

All suits brought under the FTCA must be brought against the United States. *Vernell v. United States Postal Service*, 819 F.2d 108, 109 (5th Cir.1987). All defendants other than the United States were properly dismissed for lack of subject matter jurisdiction.

Explicit exceptions in the FTCA reserve the tort immunity of the United States for claims of misrepresentation, deceit, or interference with contract rights. 28 U.S.C. § 2680(h). Atorie asserts that FAA officials made misrepresentations, upon which it relied to its detriment, and which directly and proximately resulted in the loss of its contracts. Such claims are squarely barred by the statute.

Atorie contends it was denied further discovery which would have led to evidence showing either that the FAA breached its duty of good faith and fair dealing or that the FAA negligently failed to control its employees. These claims, Atorie argues, are actionable under the FTCA. *See Block*

958

*v. Neal,* 460 U.S. 289, 295–97, 103 S.Ct. 1089, 1093, 75 L.Ed.2d 67 (1983).

Because the FTCA provides a waiver of immunity otherwise to be accorded the sovereign, the limitations and conditions upon which the government consents to be sued must be strictly construed in favor of the United States. *Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 2701–02, 69 L.Ed.2d 548 (1981); *Akutowicz v. United States,* 859 F.2d 1122, 1125 (2nd Cir.1988). In accord with this principle, causes of action distinct from those excepted under section 2680(h) are nevertheless deemed to be barred when the underlying governmental conduct "essential" to the plaintiff's claim can fairly be read to "arise out of" conduct that would establish an excepted cause of action. *Williamson v. United States Dept. of Agriculture,* 815 F.2d 368, 377 (5th Cir.1987) (quoting *Metz v. United States,* 788 F.2d 1528, 1534 (11th Cir.), *cert. denied,* 479 U.S. 930, 107 S.Ct. 400, 93 L.Ed.2d 353 (1986)).

Any cause of action Atorie could assert, regardless of how it is characterized, necessarily stems from the purported misrepresentations of FAA officials which caused Atorie to surrender its certificates. No such cause of action is cognizable under the FTCA. *Williamson,* 815 F.2d at 378. The district court properly found it was without subject matter jurisdiction to hear Atorie's FTCA claims.

### B. The Substantive Due Process Claim

The district court held Atorie's complaint failed to state a claim for a denial of substantive due process. Atorie argues that the actions—and failure to act—of the FAA and its personnel "shocked the conscience," "violated the concept of ordered liberty," and were "arbitrary and capricious." *See Brennan v. Stewart,* 834 F.2d 1248, 1256 (5th Cir.1988). Atorie asserts that "[t]he deprivation of property by circumventing procedural due process here made out a claim for deprivation of substantive due process, because the government used unacceptable means to obtain a dubious end."

Atorie complains of the loss of a property interest. The fifth amendment does not erect an absolute bar to a governmental taking of property. The amendment only proscribes deprivations of property which are without due process of law. It restricts the *methods* by which a deprivation can be achieved. Atorie's complaints involve only the procedures followed by the FAA to acquire Atorie's certificates, and its lack of action when not promptly returning the certificates as promised. The question of whether the FAA and its personnel abided by the controlling statutory and regulatory administrative framework was the basis for Atorie's procedural due process claim. The concern here is whether Atorie has also stated a substantive due process claim.

The facts reveal nothing oppressive, abusive, or shocking in the FAA's conduct which could support a substantive due process cause of action. Atorie's recent safety record gave the FAA the right, if not the duty, to investigate Atorie. The violations found allowed it to seek immediate, voluntary surrender of its certificates. *See* 14 C.F.R. §§ 121.51, 121.53. " 'The Constitution is not implicated unless the decision goes beyond mere error to an intentional or reckless disregard of the constitutional rights of the person against whom the administrative decision is made. Mere failure to make the "correct" administrative decision does not rise to the level of a constitutional violation.' " *Williamson,* 815 F.2d at 381 (quoting *Bass v. United States Dept. of Agriculture,* 737 F.2d 1408, 1415 (5th Cir.1984)); *see also Brennan,* 834 F.2d at 1257.

The claimed violations of procedural due process encompass all of Atorie's interests allegedly compromised here. The district court's dismissal of Atorie's substantive due process claims did not affect any of Atorie's substantial rights. 28 U.S.C. § 2111. The district court did not err by dismissing Atorie's substantive due process claim.

### C. Waiver of Procedural Due Process Rights

Atorie proceeded to trial against the FAA personnel in their individual capacities

on the claimed violations of procedural due process. At the conclusion of Atorie's proof, the district court directed a verdict for defendants Roger Knight, Keith Runyan, and Thomas Walenta for lack of evidence. Atorie does not appeal this ruling. Neither does it appeal the pretrial dismissal of this claim against the United States, the FAA, and the FAA personnel in their official capacity.

The jury found Hagen and Curry deprived Atorie of its fifth amendment right to procedural due process, and did not act in good faith. The jury also found Atorie had waived its procedural due process rights. The district court entered a verdict in favor of the defendants on these findings. The court additionally found waiver as a matter of law. This was based on the court's determination that Atorie negotiated with the FAA concerning its compliance with agency regulations, voluntarily relinquished its certificates to avoid an emergency suspension order, knowingly refrained from seeking court review when the FAA failed to return the certificates as promised, and, instead, attempted to restructure its business.

This appeal presents the issue of Atorie's waiver both as a finding of fact by the jury and as a conclusion of law by the court. Because we hold that the district court's decision was correct, we do not examine either the jury's verdict or the challenges that Atorie raises to the jury instructions tendered on this issue. This conclusion also makes it unnecessary to review the district court's rulings on qualified immunity.

### 1. Standard of review

We review the district court's conclusions of law *de novo* to determine whether it misapprehended or misapplied the law. *Perlman v. Pioneer Ltd. Part-*

*nership,* 918 F.2d 1244, 1247 (5th Cir.1990). We examine a claimed waiver of a constitutional right to procedural due process with the strictest scrutiny, indulging every reasonable presumption against a finding of waiver. *Bueno v. City of Donna,* 714 F.2d 484, 492 (5th Cir.1983). To find an effective waiver of a constitutional right requires a finding that the waiver was an " 'intentional relinquishment or abandonment of a known right or privilege.' " *Id.* at 492 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). "A knowing and intelligent waiver requires (1) knowledge of the right to the process due, and (2) the actual existence of that process." *Id.* at 493.

### 2. Existence of the process due

The district court apparently relied on 49 U.S.C. § 1486 as the legal basis for its finding of waiver. We look first to whether this statute provided an effective remedy for the FAA's alleged procedural violations. It provides in part:

(a) Orders subject to review; petition for review

Any order, affirmative or negative, issued by the [Federal Aeronautics] Board or the Secretary of Transportation under [the Federal Aviation Act][1] ... shall be subject to review by the courts of appeals of the United States or the United States Court of Appeals for the District of Columbia upon petition, filed within sixty days after the entry of such order, by any person disclosing a substantial interest in such order.

49 U.S.C. § 1486(a). Once review is properly invoked, the court's review is plenary:

(d) Power of court

Upon transmittal of the petition to the Board or Secretary of Transportation, the court shall have exclusive jurisdiction to affirm, modify, or set aside the order

---

**1.** The Federal Aviation Act vests the authority to issue aircraft and air carrier operating certificates in the Secretary of Transportation. 49 U.S.C. §§ 1423, 1424. Congress has charged the Administrator of the FAA with carrying out these duties. *See* 49 U.S.C. § 106(g)(1). Thus, the Administrator acts on behalf of the Secretary when issuing rules and orders related to

these duties. "Moreover, case law supports the conclusion that our power to review the Administrator's orders extends to orders issued under the authority of the FAA though not by the Administrator himself." *Southern Cal. Aerial Advertisers' Ass'n v. FAA,* 881 F.2d 672, 675 (9th Cir.1989).

complained of, in whole or in part, and if need be, to order further proceedings by the Board or Secretary of Transportation. Upon good cause shown and after reasonable notice to the Board or Secretary of Transportation interlocutory relief may be granted by stay of the order or by such mandatory or other relief as may be appropriate.

49 U.S.C. § 1486(d).

If we find that the agency action complained of could be made the subject of appellate review, then a process clearly existed by which Atorie could vindicate its regulatory rights. Atorie's main contention is that no order constituting final agency action was ever issued because Atorie voluntarily surrendered its certificates. Atorie argues further that no record existed from which it could appeal.

The term "order" in this statute has been given expansive construction. San Diego Air Sports Center, Inc. v. FAA, 887 F.2d 966, 968 (9th Cir.1989). To determine whether the FAA's action falls within the scope of section 1486(a), the circuits have focused on both the finality of the action and the adequacy of the record to support judicial review. See id. at 968–69.

**■** To be deemed "final," an order under section 1486(a) need not be the culmination of lengthy administrative proceedings. It need only be an agency decision which "imposes an obligation, denies a right, or fixes some legal relationship." Nevada Airlines, Inc. v. Bond, 622 F.2d 1017, 1020 n. 5 (9th Cir.1980); Puget Sound Traffic Ass'n v. CAB, 536 F.2d 437, 439 (D.C.Cir.1976). If the order provides a "definitive" statement of the agency's position, has a "direct and immediate" effect on the day-to-day business of the party asserting wrongdoing, and envisions "immediate compliance with its terms," the order has sufficient finality to warrant the appeal offered by section 1486. Southern Cal. Aerial Advertisers' Ass'n v. FAA, 881 F.2d 672, 675 (9th Cir.1989).

Finality requires that the record adequately demonstrate that the consequences of the order are sufficiently concrete and definite to warrant review. Nevada Airlines, 622 F.2d at 1020 n. 5. Courts have found administrative records sufficient for review under section 1486 when that record consisted of no more than a letter. See, e.g., San Diego Air Sports Center v. FAA, supra; Southern Cal. Aerial Advertisers' Ass'n v. FAA, supra. While such a record might be insufficient to permit a substantive review of the agency's action, it does suffice to permit review of a claimed procedural impropriety. San Diego Air Sports Center, 887 F.2d at 969.

**■** Atorie voluntarily surrendered its certificates, and no order was initially issued by the FAA. See 49 U.S.C. § 1429(a). Because Atorie never demanded their return, the FAA was never obliged to justify its continued holding of the certificates. The question, then, is whether Atorie had the duty to demand its certificates back when FAA personnel did not honor the asserted agreement for their prompt return.

Atorie had such a duty. Judicial review of that demand and the FAA's refusal would have been available under section 1486(a). Atorie chose to take no initiative to mature this right to review because, as detailed below, experienced counsel advised Atorie that it was in its best interest to string the matter along and seek an administrative solution.

The cases Atorie cites to support its contention that no judicial review was available are not in point. See Red River Transp. and Dev. Co., Inc. v. FAA, 630 F.2d 592 (8th Cir.1980); Air California v. United States Dept. of Transp., 654 F.2d 616 (9th Cir.1981). The FAA letter appealed in Red River Transport stated only that the FAA was investigating a possible violation. Similarly, the letter in Air California suggested a course of action which the FAA might take in pursuing future violations. In both cases, the proposed action was tentative. Here, Atorie had voluntarily surrendered its certificates, and its business was effectively grounded. Atorie could have provoked direct and immediate action by the FAA had it demanded a return of its certificates under the FAA's

commitment that they would be promptly returned.

### 3. Knowledge of the right to the process due

Did Atorie know its rights and intentionally forego its recourse in the courts? "The record must reflect a basis for the conclusion of actual knowledge of the existence of the right or privilege, full understanding of its meaning, and clear comprehension of the consequence of waiver." *Bueno v. City of Donna, supra,* 714 F.2d at 492–93.

The undisputed facts in the record before the district court establishes such a basis. Prior to the meeting at which it surrendered its certificates, Atorie retained the services of attorney Alan Zvolanek, a former FAA lawyer familiar with the applicable statutes and regulations. Atorie summarized his deposition and offered portions at trial to establish that the FAA was not complying with the terms of the agreement. Other portions of the deposition dealt specifically with the issue of waiver under 49 U.S.C. § 1486. Although these portions were not before the jury, this entire deposition was placed before the district court by Atorie in response to the defendants' motion for summary judgment. The entire deposition is part of the record on appeal.

After detailing the circumstances of the surrender of Atorie's certificates and his understanding of the parameters of the agreement, Zvolanek responded to the questions of FAA counsel as follows:

Q   Did it ever occur to you to try to go to court sooner to get the certificates back?

A   No.  Because when I talked to the FAA, we always got to thinking, well, all you have to do is take care of this and that and we will be there.  Do this, do that.  We started working with them and working with them and working with them, and then every time we would do something, there would be more to do.

So I think we kind of got led on for a while, and by the time it was apparent that it wasn't going to happen, it was just too late to bother with that.  We were running out of time.

*We could have gone to court,* but the court couldn't have done anything for us at that point in time.  We were so far behind the eight ball, our only chance was to work with the FAA if we were going to get out of this mess.

\*      \*      \*      \*      \*      \*

Q   Doesn't the federal aviation regulation state if there's even a negative order, that you can go ahead and file an appeal with the NTSB or go directly to the Circuit Court of Appeals?

A   Not sure what you mean by that.

Q   Let's say that at some point in time you realize that the FAA was not going to give the certificates back pursuant to the agreement that you had made on May 10th.  Couldn't you have taken that as a negative order and gone on up to the Court of Appeals and filed something with the NTSB?

A   Well, again, there's a lot you could have done, but practically it was something we would have done under the scheme of things, because again we were trying to work with the FAA to get it taken care of, desperately to get it taken care of.

I have found, in working with the FAA, for and against them, when you start rocking the boat, you start taking them up, you no longer have too many accommodations, and we couldn't afford that, so *Atorie chose not to go through the courts at that point, just to cooperate with the FAA and do whatever it could to suit them.*

Atorie's counsel knew how to secure Atorie's right to judicial review.  His testimony reflects that a deliberate decision was made to forego this option.  Based on these uncontradicted facts, the district court did not err in concluding that waiver occurred as a matter of law.

Atorie argues that *knowing* waiver could not have occurred because the jury found the defendants acted in bad faith when inducing Atorie to surrender its certificates.  The district court did not conclude that Atorie waived its procedural due pro-

cess rights at the moment when it turned over its certificates. Rather, Atorie's waiver only began at the point Atorie realized that the FAA would not live up to the agreement for return within two days of surrender. At the end of the second day, the FAA was in violation of their agreement, as Atorie understood it. Moreover, the FAA had laid out additional requirements for the return of the certificates. From that point forward, Atorie knew its certificates would not be returned according to its understanding of the FAA's promise. When Atorie then decided not to avail itself of its appellate rights, waiver occurred.

### 4. A final argument

Citing *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965), Atorie makes a final argument that the burden of proof was shifted improperly. Atorie argues that if the FAA had issued an emergency order, the FAA would have borne the burden of establishing reasons for revocation by a preponderance of the evidence. Instead, Atorie contends that, due to the FAA's bad faith actions, "the government had no notice limitations placed upon it and could bring up any allegation."

Whether Atorie bases this argument on the finding of waiver or on the finding of an appellate process capable of waiver, the answer to the argument lies in the fact that, had Atorie demanded the return of its certificates, the FAA would have been required to establish reasons for a continued seizure upon denial. The burden of proof would be the same whether Atorie appealed from the issuance of an emergency order of revocation or from a rejection of a demand to end voluntary surrender. *Armstrong v. Manzo* has no application here. This argument is without merit.

### III

The judgment of the district court is AFFIRMED.