REVISED, APRIL 24, 2001

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-20169
_____

ZEPHYR AVIATION, L.L.C.; ET AL.,

Plaintiffs,

ZEPHYR AVIATION, L.L.C.,

Plaintiff-Appellant,

vs.

ROBERT ALAN DAILEY, also known as
Bob Dailey; KENNETH WAYNE CLARY,
also known as Ken Clary,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

April 4, 2001

Before HILL[*], JOLLY, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Zephyr Aviation, L.L.C. (Zephyr) appeals the dismissal of

its constitutional tort action against Robert Alan Dailey and

Kenneth Wayne Clary (the Defendants).  Zephyr contends that the

FAA's administrative remedies do not contemplate constitutional

tort actions against FAA inspectors in their individual capacity,

and, therefore, the district court erred in dismissing its claims

_____

[*] Circuit Judge of the Eleventh Circuit, sitting by
designation.

for lack of subject-matter jurisdiction after concluding that Zephyr failed to exhaust its administrative remedies.  Zephyr also contends that the district court erred in dismissing its claims under Rule 12(b)(6) before any discovery took place. Though we agree with Zephyr that its suit should not have been dismissed because of a failure to exhaust administrative remedies, we ultimately conclude that Zephyr has failed to state a claim for which relief can be granted.  Therefore, we AFFIRM the district court's judgment of dismissal.

**Factual and Procedural Background**

In April 1997, Zephyr purchased a Lear 24B aircraft, serial number 160, N190BP (the Jet) for $463,250.  In December 1997, the Houston district office of the Federal Aviation Administration (FAA) received a hotline complaint alleging that the Jet was being used for illegal charter flights.  Specifically, the complaint alleged that some flight hours accumulated by the Jet were not being properly recorded in aircraft logs.[1]  Defendant Dailey was an Aviation Safety Inspector working for the FAA's Houston office; Dailey, along with other inspectors, initially investigated the hotline complaint.

On January 16, 1998, the FAA issued a letter of investigation concerning alleged uncharted flights on the Jet. On March 20, 1998, FAA officials, including Dailey, obtained

---

[1] In the Fall of 1997, Zephyr had hired an investigation firm to look into the conduct of a pilot suspected of flying the Jet on several unauthorized charter trips.  The hotline phone call apparently concerned similar conduct by a pilot.

invoices and records related to the Jet indicating to them that flight hours had not been properly recorded. The inspectors discussed their findings with David Olson, a Zephyr principal, and advised Olson of their intent to place a "condition notice" on the aircraft. A condition notice advises an aircraft operator that the subject aircraft is not airworthy because of a condition related to the aircraft. *See* 14 C.F.R. §§ 39.1, 39.11 (2000). Until the condition is corrected, the aircraft should not be flown. *See* 14 C.F.R. § 39.3 (2000) ("No person may operate a product to which an airworthiness directive applies except in accordance with the requirements of that airworthiness directive.")

On April 5, 1998, the Jet was flown from Houston to a repair facility at Addison Airport of Dallas. Dailey contacted Clary, a Principal Maintenance Inspector with the FAA's Dallas district office, to confirm the Jet's presence in Dallas. On April 15, 1998, Clary placed a condition notice on the Jet at Dailey's request. Clary also left a "Notice of Proposed Certificate Action" specifying that no FAA Part 45 placard had been placed on the Jet and that the Jet's airworthiness certificate had been "revoked." On May 12, 1998 an amended aircraft condition notice was issued and attached to the Jet which specified that the Jet's airworthiness certificate was "invalid" because of unrecorded flight time and failure to comply with sections of 14 C.F.R. §

91.3.[2]  On May 15, Zephyr changed the Jet's insurance status to "ground coverage only."

On June 25, Zephyr's attorney spoke with FAA officials, including Dailey.  During that conversation, as later documented in a June 26 letter by Zephyr's attorney, FAA officials made it clear that the Jet's airworthiness certificate had never been revoked, but that the Jet was "unairworthy" because of unrecorded flight hours.  The same letter recorded the steps to be taken to update the Jet's maintenance reports and thus remove any doubt as to its airworthiness.  On July 27, 1998, after reviewing the steps taken to correct the maintenance reports, the FAA retracted the condition notice in a letter to Zephyr.

On April 1, 1999, Zephyr sold the Jet to XtraJet International for $320,000.

On June 30, 1999 Zephyr and David Olson filed the present civil complaint in Texas state court alleging constitutional tort violations by Dailey and Clary. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).  Zephyr complains that Dailey and Clary conspired to deprive the company of property – the airworthiness certificate for the Jet - without due process of law in violation of the Fifth Amendment of the United States

---

[2] Section 91.3 requires that airplane owners maintain maintenance logs that accurately depict the number of hours that the airplane has been in flight.  14 C.F.R. § 91.3.  The FAA inspectors believed that the unauthorized use of the Jet had not been reflected in the Jet's maintenance logs.  As a consequence, it was impossible to know whether the Jet was being maintained in accordance with FAA regulations.

Constitution and the Texas state constitution. Essentially, Zephyr argues that when Dailey and Clary purported to "revoke" the Jet's airworthiness certificate in a condition notice that was affixed to the Jet, the officers were acting ultra vires and with malice. Zephyr maintains that the inspectors had no authority to revoke an airworthiness certificate under 14 C.F.R. 13.19(b) (2000), and failed to provide notice of the revocation as required by federal regulations. After the Jet's airworthiness certificate was "revoked," Zephyr alleges that the Jet's market value depreciated substantially.[3]

The defendants removed the action to federal court. The district court dismissed Olson as a plaintiff on December 1, 1999 for failing to state an "articulable claim."[4] On December 22, 1999, the Defendants moved for dismissal pursuant to Rule 12(b)(1) arguing that the district court did not have subject-matter jurisdiction because Zephyr failed to exhaust administrative remedies. Alternatively, the Defendants argued that Zephyr's complaint should be dismissed pursuant to Rule 12(b)(6). On January 21, 2000, the district court granted the

---

[3] In its response to Defendants' motion to dismiss, Zephyr summarized its damage as follows: "The action of the two FAA inspectors was tantamount to an illegal taking of property. Their action on April 15, 1998, transformed [the Jet] worth approximately $450,000, is [sic] into a multitude of salvageable parts worth about $80,000." Zephyr implies that this decrease in value was caused by the uncertainty surrounding the Jet's airworthiness certificate, and the fear that the plane would be more difficult to insure because of this uncertainty. Zephyr does not seek damages for loss of use of the Jet during the period that it was grounded because of the condition notices.

[4] Neither Zephyr, nor Olson have appealed Olson's dismissal from the suit.

Defendant's motion finding that it had no jurisdiction to hear Zephyr's suit, and, alternatively, that Zephyr failed to make out *Bivens* claims against the Defendants as individuals.

## Discussion

The district court granted the Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). This Court reviews both rulings de novo. *See Martinez v. American Fed'n of Gov't Employees*, 980 F.2d 1039, 1041 (5th Cir. 1993) (reviewing question of district court's subject matter jurisdiction de novo); *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (calling for de novo review of Rule 12(b)(6) dismissals). We begin by considering the district court's determination that it did not have subject matter jurisdiction over Zephyr's claims because Zephyr failed to exhaust administrative remedies provided by the FAA.[5]

---

[5] The defendants have not argued that the remedial scheme outlined in the Aviation Act displaces *Bivens* actions against FAA officials. *See Carlson v. Green*, 464 U.S. 14, 18–19 (1980)(recognizing that a *Bivens* remedy is not available (1) where Congress has provided an equally effective alternative remedy, and (2) where, even absent affirmative action by Congress, special factors counsel hesitation). Interpreting *Carlson's* "special factors" holding, the Court later stated: "When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies." *Schweiker v. Chilicky*, 487 U.S. 412, 425 (1988); *see also Bush v. Lucas*, 462 U.S. 367 (1983). Based on the pleadings, we consider only whether the Aviation Act mandates exhaustion of administrative remedies prior to the filing of a *Bivens* claim, not whether it displaces *Bivens* claims all together.

6

In determining the role of the doctrine of exhaustion in the *Bivens* context, the initial focus is on congressional intent. *McCarthy v. Madigan* 503 U.S. 140, 144 (1992). "Where Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs." *Id.* (citations omitted). In *McCarthy*, the Court instructed that when determining whether exhaustion should be required as a matter of judicial discretion, "federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *Id*. at 145. According to the Court, this balancing should be "intensely practical" and consider "both the nature of the claim presented and the character of the administrative procedure involved." *Id*.

Congress has developed an administrative appeal structure for reviewing "orders" of the FAA, thus our initial task is to determine whether that structure mandates exhaustion with respect to *Bivens* actions for monetary damages. Under the Aviation Act, parties adversely affected by orders of the FAA Administrator to suspend or revoke a certificate issued by the FAA may appeal to the National Transportation Safety Board (NTSB). *See* 49 U.S.C. § 44709(d) (2000).[6]  The United States Courts of Appeals then have

---

[6] The Administrator of the FAA may reinspect a civil aircraft at any time, and, following such inspection may suspend or revoke any part of a certificate issued by the FAA if in the view of the Administrator safety so requires. *See* 49 U.S.C. § 44709(a).  Case law clarifies that the appeal provisions apply to orders issued under the authority of the FAA administrator, not just the administrator herself. *See Atorie Air, Inc. v. Federal*
(continued...)

"exclusive jurisdiction to affirm, amend, modify or set aside" orders of the NTSB or the FAA. 49 U.S.C. § 46110(c) (2000). The FAA's "exhaustion" requirement, promulgated pursuant to section 46110, mandates only that orders or decisions of the FAA be "final" before they be reviewed by a federal court. *See* 14 C.F.R. § 13.16(k) (2000).

It is impossible to conclude that these Congressional and agency requirements mandate exhaustion of administrative remedies within the FAA prior to bringing any *Bivens* action in federal district court. Indeed, the Aviation Act's administrative review structure provides an administrative forum in which parties can contest adverse FAA orders. That appeal structure does not, however, provide a forum for redressing constitutional violations by individual FAA inspectors with monetary damages. *See* *McCarthy*, 503 U.S. at 142 (recognizing that Congress had not intended general inmate grievance procedures to impose exhaustion requirement on *Bivens* actions when the procedures did not address harms raised or remedies provided by *Bivens* action).[7] Because

---

[6](...continued)
*Aviation Administration*, 942 F.2d 954, 959, n.1 (5th Cir. 1991) (quoting *Southern Cal. Aerial Advertisers Ass'n v. FAA*, 881 F.2d 672, 675 (9th Cir. 1989)).

[7] In the 1996 Prison Litigation Reform Act, Congress broadened the relevant provisions to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a) (Supp. 1997). Some courts have held that because Congress has not made available administrative remedies equivalent to that available through a *Bivens* claim, exhaustion of administrative remedies is still not
(continued...)

Congress has not "meaningfully addressed the appropriateness of requiring exhaustion in this context," extension of the exhaustion doctrine to cases like the one before us depends on the exercise of sound judicial discretion.

This Circuit has never taken up the scope of the exhaustion doctrine with respect to *Bivens* actions against officers of the FAA.[8]  Other circuits have held that federal district courts have subject matter jurisdiction over *Bivens* claims raising "broad constitutional challenges to FAA practices," but not over claims that are "inescapably intertwined with a review of the procedures and merits surrounding [an FAA] order."  *See Foster v. Skinner*, 70 F.3d 1084, 1089 (9th Cir. 1995)(citations omitted); *Green v. Brantley* 981 F.2d 514, 521 (11th Cir. 1993); *Gaunce v. deVicentis*, 708 F.2d 1290, 1292-93 (7th Cir.), cert. denied, 464 U.S. 978 (1983). These holdings are based on the principle that plaintiffs should not be able to circumvent administrative review through suit in federal court.  *See, e.g., Mace v. Skinner*, 34

---

[7](...continued)
required prior to seeking *Bivens* relief.  *See Garrett v. Hawk*, 127 F.3d 1263, 1266 (10th Cir. 1997).  Thus, even if Congress imposes a more clear exhaustion requirement in the Aviation Act, it might not be applicable to *Bivens* claims unless comparable administrative remedies were available.

[8] In *Atorie Air*, this Court held that a plaintiff suing individual inspectors of the FAA under *Bivens* for violating procedural due process rights could waive its right to pursue those rights in federal court by choosing "to take no initiative to mature [its] right to review" within the administrative review framework established in the organization.  *See Atorie Air*, 942 F.2d at 960.  Waiver, however, is an affirmative defense that must be raised by the defendant.  FED.R.CIV.P. 8(c).  The Defendants in this case have never raised the defense of waiver.  Therefore, the Defendants' reliance on *Atorie Air* is misplaced.

9

F.3d 854, 857-58 (9th Cir. 1994) (explaining that Aviation Act's judicial review provision divests district courts of subject matter jurisdiction over "claims against FAA . . . officials *involving final orders that are otherwise subject to judicial review under the Act.*")(emphasis added); *Gaunce*, 708 F.2d at 1292-93 (concluding that where merits of *Bivens* actions essentially contest the propriety of agency action, plaintiffs must comply with Aviation Act's administrative appeal process); *see also Myers v. Bethlehem Shipbuilding Corp.*, 58 S.Ct. 459, 462-64 (1937)(explaining that a federal lawsuit may not be used to pre-empt administrative action).

While we agree that parties may not avoid administrative review simply by fashioning their attack on an FAA decision as a constitutional tort claim against individual FAA officers, we disagree with the Defendants that this case implicates that concern. Zephyr's claims do not relate to an FAA order currently pending against it. Indeed, to the extent that Zephyr sought review of the FAA's attachment of a condition notice to the Jet, its complaint would be moot since the FAA has removed the condition notice. Instead, Zephyr seeks monetary relief for alleged extra-procedural and unconstitutional actions by FAA inspectors. The administrative appeal procedure outlined in the Aviation Act can provide no such relief. In this sense, the "no collateral attack" holdings have no application to cases like this one that do not implicate an FAA order that is currently in place and hence could not function as a collateral attack on an FAA order or action.

We are convinced that the same factors that counseled against imposing a judicial exhaustion requirement in *McCarthy* also counsel against judicial imposition of an exhaustion requirement in the context of *Bivens* suits against FAA officials like the one alleged in this case. The Supreme Court concluded in *McCarthy* that an inmate claiming violations of his Eighth Amendment rights did not need to exhaust internal prison grievance proceedings because (1) the administrative procedures could not authorize an award of money damages, and (2) requiring exhaustion would severely burden the interests of the inmate. *Id*. at 145-47. Initially, the Aviation Act's appeal structure grants neither the NTSB, nor the FAA the power to award monetary relief against FAA officers - the only remedy Zephyr seeks in this *Bivens* action. Like the Supreme Court in *McCarthy*, we choose not to impose a judicial exhaustion requirement on this *Bivens* claim when the agency that would be given initial authority over the claim lacks authority to grant monetary relief. *See id*. at 148 (noting that exhaustion requirement is not appropriate where an agency is "competent to adjudicate the issue presented, but still lack[s] authority to grant the type of relief requested.") Moreover, we believe that requiring exhaustion on facts such as these would impose a significant burden on plaintiffs in that it would require them to engage in an administrative review process that cannot possibly provide the relief that they seek. *See id*. at 153 (recognizing that where administrative review cannot provide relief sought, but can lead to dismissal of complaint for failing to meet statutory

deadlines, plaintiffs "have everything to lose and nothing to gain.") For these reasons, we decline to impose a judicial exhaustion requirement on *Bivens* actions against FAA officials when the *Bivens* suit does not implicate existing FAA enforcement actions.

Because Congress has not imposed an exhaustion requirement in this context and judicial imposition of such a requirement would not be prudent, the district court erred in concluding that it did not have subject matter jurisdiction over the Zephyr's *Bivens* action. Nevertheless, we are convinced that the facts alleged by Zephyr do not make out tenable claims that the company's substantive or procedural due process rights have been violated. For that reason, the district court's dismissal of those claims pursuant to Rule 12(b)(6) was appropriate.

In reviewing the district court's 12(b)(6) ruling, we take all facts pleaded by Zephyr as true and liberally construe the complaint in favor of Zephyr. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). All parties agree that on April 15 Clary posted on the Jet a condition notice, which stated in part "the airworthiness certificate has been revoked." Similarly, neither Clary nor Dailey contends that he had authority to revoke the Jet's airworthiness certificate without notice to Zephyr and additional proceedings. To complete Zephyr's allegations, we must assume that the defendants used the word "revoke" maliciously and intentionally, and that the use of "revoke" in this manner deprived Zephyr of a property interest. Though this Circuit views motions to dismiss under Rule 12(b)(6)

12

"with disfavor," *see Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir.1982), we believe it "beyond doubt" that the facts alleged by Zephyr, even if proven, would not entitle the company to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Zephyr alleges violations of its constitutional right to due process guaranteed by the Fifth Amendment, though it is unclear whether it raises procedural or substantive due process claims. We consider both alternatives.

The defendants allegedly malicious act of placing a condition notice on the Jet that purported to "revoke" the Jet's airworthiness certificate does not rise to the level of egregious conduct that might constitute a substantive due process violation. *See County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998); *Brown v. Nationsbank Corp.*, 188 F.3d 579, 591 (5th Cir. 1999); *Williamson v. United States Dept. of Agriculture,* 815 F.2d 368, 381 (5th Cir. 1987); *Bass v. United States Dept. of Agriculture*, 737 F.2d F.2d 1408, 1415 (5th Cir.), *reh'g denied*, 742 F.2d 1453 (1984). Even assuming that the Defendants initial use of "revoke" was intentional, Zephyr does not allege that the Defendants had no basis for being concerned about the airworthiness of the Jet. Zephyr does not dispute that the Jet's flight hours were not properly recorded and that this recording problem rendered the Jet unairworthy. Nor does Zephyr allege that the defendants insisted on enforcing the condition notice as if it were a revocation order. Indeed, Zephyr concedes that Dailey worked with the company to resolve the problems with

13

the Jet's flight records and maintenance status. Thus, at most, the Defendant's allegedly malicious act of revocation mis-characterized a legitimate and undisputed problem with the Jet. Moreover, any question regarding the Defendant's mis-characterization of the FAA action had been resolved by the middle of May, long before the undisputed underlying problems had been corrected. Thus, because the Jet's legitimate and undisputed records problem rendered it unairworthy, the allegedly intentional mis-characterization of the FAA action caused Zephyr no additional harm. In sum, such conduct simply does not rise to the level of a substantive due process violation.

We also reject Zephyr's complaint in so far as it alleges that the posting of the condition notice itself deprived it of property in violation of the procedural due process protections. The Supreme Court has consistently held that government officials do not violate procedural due process when they deprive an individual of property, so long as a meaningful post-deprivation remedy was available. See *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding that due process was not violated when government official *intentionally* deprived individual of property, provided meaningful post-deprivation remedy was available); *Parratt v. Taylor*, 451 U.S. 527, 542 (1981) (holding that due process was not violated when government official negligently deprived individual of property, provided meaningful post-deprivation remedy was available). Even assuming the placement of a condition notice on the Jet purporting to revoke the Jet's airworthiness certificate constituted a deprivation of property,

14

the availability of the FAA's appeal structure to remedy that deprivation after the fact provided sufficient process to protect Zephyr's procedural due process rights. Indeed, after the placement of the notice, an informal meeting with FAA officials led to the removal of the condition notice. Because Zephyr has not alleged conduct that could possibly support a violation of its substantive or procedural due process rights, the district court properly dismissed Zephyr's complaint.

## Conclusion

Though we conclude that Congress has not imposed an exhaustion requirement with which Zephyr has failed to comply, and that judicial imposition of such a requirement is not warranted, we ultimately agree that the allegations raised by Zephyr fail to state a constitutional claim. Therefore, we AFFIRM the district court's judgment of dismissal.