IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 18, 2008

Charles R. Fulbruge III
Clerk

No. 07-10107

ARTHUR FLEMING and M&F HOME HEALTH CARE INC.

Plaintiffs-Appellants

v.

MICHAEL O. LEAVITT et al

Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Texas
No. 3-05-CV-2077-BH

Before JOLLY, HIGGINBOTHAM, and PRADO, Circuit Judges.

PER CURIAM:[*]

This is a case under the Medicare Act. Plaintiffs sought mandamus and declaratory relief in district court to compel Defendants to accept a cost report and to reimburse Plaintiffs for their past services for amounts allegedly decided in a settlement. The district court dismissed the action, finding that Plaintiffs had failed to exhaust their administrative remedies – a prerequisite to jurisdiction under the Medicare Act. Plaintiffs appealed.

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I

Arthur Fleming provided home health care to Medicare patients through M&F Home Health Care, Inc. The Secretary of the Department of Health and Human Services has delegated the administration of Medicare to the Center for Medicare and Medicaid Services. CMS contracts with insurance companies to handle reimbursement of individual Medicare providers, such as Plaintiffs, from the federal Medicare Trust. These "fiscal intermediaries" receive year-end cost reports from providers, determine which provider claims are eligible for reimbursement from the trust, and authorize payments for services provided to eligible beneficiaries for covered care. M&F entered a provider agreement with CMS. Medicare's "Hospital Insurance Benefits for the Aged and Disabled (Part A)" allowed CMS to pay M&F for some of the post-hospital home care that it provided to patients. Palmetto Government Benefits Administrators, LLC, was the financial intermediary between CMS and M&F, receiving interim and fiscal year-end (FYE) cost reports from M&F. Palmetto, after accepting FYE cost reports and auditing them, issued a Notice of Program Reimbursement, i.e., a "settlement" or "NPR," indicating adjustments that Palmetto had made based on the audit. The NPRs authorized the amounts owed to M&F as a result of underpayments throughout the fiscal year, as well as any amounts owed by M&F to Medicare resulting from "overpayments" that M&F had received for non-covered services or ineligible payments.

Plaintiffs dispute Palmetto's treatment of two of its cost reports. Based on Plaintiffs' cost report for FYE January 31, 1998, the first cost report, Palmetto issued an NPR indicating that Medicare had overpaid M&F by more than $1.1 million and that M&F owed this amount to Medicare. Plaintiffs dispute this amount and claim that the parties, after a partial administrative hearing, resolved the dispute in a settlement agreement. Plaintiffs allege that the parties established, through an unwritten settlement, that Medicare owed more than

$1.1 million to M&F but that Defendants failed to honor this settlement agreement. Plaintiffs do not allege that they appealed the disputed NPR to the Provider Reimbursement Review Board; instead they alleged in their original complaint before the district court that "[i]n 1998 M&F began an administrative appeal to review the claims denied by Palmetto through the WEDGE/ORT [an 'intensified audit or post-payment medical review']." They further asserted that the "settlement terms" established that M&F should be paid for 18,225 claims and the visits associated with those claims.

M&F stopped doing business with Medicare and Palmetto on December 31, 1998. It filed the second cost report at issue on April 19, 1999. This report included all costs for the final months of its business – February 1, 1998, through December 31, 1998. Palmetto allegedly refused to accept this report and created its own cost report.[1] It then issued an NPR indicating further amounts that M&F owed to Medicare and on November 19, 1998, declared M&F to be in non-payment status.

In 2005, Plaintiffs filed a complaint in federal district court, requesting three remedies. First, they asked the district court to enter a declaratory judgment setting out the rights established under the alleged settlement. Second, they requested two writs of mandamus: one to require Defendants to accept their second cost report, and one to stop Defendants' collection proceedings. Defendants filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6). The parties consented to have their case heard by a magistrate judge. The magistrate determined, "Because the exhaustion of administrative remedies that ends in a final agency determination is a jurisdictional prerequisite to suit,

---

[1] Plaintiffs allege that Defendants initially refused to accept the cost report because it was not dated with the proper FYE date of January 31, 1998. But Palmetto had allegedly advised Plaintiffs to date the report as of December 31, 1998 – the date of Plaintiffs' final day of business. Plaintiffs claim that Palmetto's employee "admits that the proper date for the cost report was 12/31/98, but states that the report was not received until January 12, 2000," outside of the five-month time period allowed for filing.

this court lacks subject matter jurisdiction to hear Plaintiffs' claim for declaratory judgment."[2] The district court dismissed Plaintiffs' petition in its entirety in a corrected final judgment, finding a lack of jurisdiction under 12(b)(1). Plaintiffs timely appealed.

## II

We review de novo a district court's determination that a case arises under the Medicare Act.[3] We also review de novo a grant of a 12(b)(1) motion to dismiss on the grounds of a failure to exhaust.[4] Defendants and Plaintiffs both argue that this case arises under the Medicare Act, and the court did not err in finding the same. A claim arises under the Medicare Act if "'both the standing and the substantive basis for the presentation' of the claim is the Medicare Act . . . or if the claim is 'inextricably intertwined' with a claim for Medicare benefits."[5] All of Plaintiffs' claims involve Defendants' determinations of amounts owed for money that Medicare allegedly overpaid to Plaintiffs – a quintessential reimbursement dispute arising under the Medicare Act.

The Medicare Act, Title XVIII of the Social Security Act, is subject to the Social Security Act's requirements for exhaustion of claims.[6] 42 U.S.C. § 405(g) provides,

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party,

---

[2] Fleming v. Leavitt, Civ. Action No. 3:05-CV-2077-BH, 2006 WL 2880452, *6 (N.D. Tex. Sept. 29, 2006).

[3] RenCare, Ltd. v. Humana Health Plan of Tex., Inc., 395 F.3d 555, 557 (5th Cir. 2004).

[4] See Zephyr Aviation, L.L.C. v. Dailey, 247 F.3d 565, 570 (5th Cir. 2001).

[5] RenCare, 395 F.3d at 557 (quoting Heckler v. Ringer, 466 U.S. 602, 606, 623 (1984)).

[6] See Ringer, 466 U.S. at 614-15 (citing Weinberger v. Salfi, 422 U.S. 749, 760-61 (1975)) ("The third sentence of 42 U. S. C. § 405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii, provides that § 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for all 'claim[s] arising under' the Medicare Act.").

irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States . . . .[7]

The Supreme Court in Heckler v. Ringer confirmed that parties must follow the exhaustion requirements of § 405 when the Medicare Act is "both the standing and the substantive basis for the presentation."[8] Several sections of the Medicare Act specify the administrative procedures that parties must pursue when disputing NPRs. 42 U.S.C. § 1395oo provides that "[a]ny provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board" (the PRRB). If the amount in controversy is $10,000 or more,[9] a hearing is available for any provider

> dissatisfied with a final determination of the organization serving as its fiscal intermediary . . . to the amount of total program reimbursement due the provider for the items and services furnished to individuals for which payment may be made under this title [42 USCS §§ 1395 et seq.] for the period covered by such report . . . .[10]

The provider must file "a request for a hearing within 180 days after notice of the intermediary's final determination."[11] A PRRB decision based on the hearing is final unless the Secretary, "within 60 days after the provider of services is notified of the Board's decision, reverses, affirms, or modifies the Board's

---

[7] Emphasis added.

[8] 466 U.S. at 615; see also Shalala v. Ill. Council on Long Term Care, 529 U.S. 1, 12 (2000) (citing Ringer's reiteration of this principle).

[9] 42 U.S.C. § 1395oo(a)(2).

[10] 42 U.S.C. § 1395oo(a)(1)(A)(i).

[11] 42 U.S.C. § 1395oo(a)(3).

decision,"[12] in which case the decision is final once the Secretary has acted on it. A provider has

> the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received.[13]

Defendants assert that because Plaintiffs' claims all arise under the Medicare Act and because Plaintiffs failed to exhaust their administrative remedies as required under the Act, the district court properly found that it lacked jurisdiction. Plaintiffs counter that, although their claims arise under the Act, there were no available remedies for them to exhaust: by allegedly "settling," Defendants precluded the possibility of administrative exhaustion. Because Defendants wrongfully halted administrative review by "settling," Plaintiffs assert, they should be estopped from arguing exhaustion. Furthermore, they argue, "the fiscal intermediary's refusal to accept the providers' timely submitted final cost report was an action for which no administrative review was permitted."[14]

The district court did not err in finding that Plaintiffs had administrative remedies available to them and failed to exhaust those remedies, thus divesting the court of jurisdiction. Plaintiffs' complaint contested Palmetto's refusal to reopen the disputed cost reports underlying the NPRs. As the district court found, Palmetto, as the financial intermediary, was not required to reopen the

---

[12] 42 U.S.C. § 1385oo(f)(1).

[13] Id.

[14] Plaintiffs' Brief at 3.

report,[15] nor was its refusal to do so a final appealable action. Plaintiffs could have disputed Palmetto's audits of their cost reports and resulting NPR determinations by appealing the NPRs, as provided in the Medicare Act, but they failed to exhaust these administrative procedures. Plaintiffs could also have appealed the amounts owed in the alleged "settlement agreement" between Plaintiffs and Defendants by appealing the NPR that gave rise to those amounts owed. Although Plaintiffs allege that they "began an administrative appeal" in 1998 and that Palmetto offered to "settle" the proceedings, Plaintiffs fail to allege that they appealed pursuant to the procedures in 42 U.S.C. § 1395oo(a), nor do they explain why the alleged settlement, which they concede was "not reduced to writing," prevented them from pursuing the judicial review procedures provided in 42 U.S.C. § 1395oo(f)(1). Indeed, Plaintiffs began these administrative proceedings before Defendants issued an NPR; the Medicare Act requires providers to request review after the intermediary has made a "final determination" – i.e., completed an NPR. In short, the district court correctly identified the administrative remedies available to Plaintiffs and their failure to allege that they had properly exhausted those remedies.

Even assuming that Defendants were estopped from asserting that Plaintiffs failed to exhaust their administrative remedies, which it appears they were not, we must consider sua sponte, if necessary, whether Plaintiffs exhausted their available remedies in determining whether the district court had subject matter jurisdiction;[16] exhaustion under the Medicare Act is a

---

[15] See 42 C.F.R. § 405.1885(a) (providing that intermediaries "may" reopen their determination if providers make a motion to reopen "within 3 years of the date of the notice of the intermediary or Board hearing decision, or where there has been no such decision, any such request to reopen must be made within 3 years of the date of notice of the intermediary determination").

[16] See Huff v. Int'l Longshoremen's Ass'n, Local No. 24, 799 F.2d 1087, 1088 (5th Cir. 1987); see also Sandy Creek Investors, Ltd. v. City of Jonestown, 325 F.3d 623, 626 (5th Cir. 2003) (quoting United States v. Lipscomb, 299 F.3d 303, 358 (5th Cir.2002)) ("'[I]f parties do

prerequisite to jurisdiction. Because Plaintiffs failed to exhaust their remedies under the Act, the district court did not err in holding that it lacks jurisdiction.

III

In district court, Plaintiffs asserted jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. §§ 2201 and 2202 (the Declaratory Judgment Act), and 28 U.S.C. § 1361 (providing jurisdiction for mandamus relief).

Section 405(h) expressly excludes federal question jurisdiction under § 1331, and where claims arise under the Medicare Act, as they did here, no portion of those claims "can be channeled into federal court by way of federal-question jurisdiction."[17]

For Plaintiffs' assertion of jurisdiction under the Declaratory Judgment Act, the district court did not err in holding that the Declaratory Judgment Act is not an independent source of jurisdiction,[18] and Plaintiffs have failed to raise other valid bases for jurisdiction.

Although we have not determined whether § 405 requires exhaustion of administrative remedies prior to requesting mandamus relief, the district court also did not err in holding that it lacked mandamus jurisdiction. The district court held "that the exhaustion requirement applies to Plaintiffs' pleas for mandamus relief," but its jurisdictional holding need not have reached so broadly. Its recognition that "mandamus 'is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the

---

not raise the issue of jurisdiction, or even if they contend that the Court of Appeals has jurisdiction we still must determine, sua sponte, whether we have jurisdiction in a particular case.'").

[17] Ringer, 466 U.S. at 616.

[18] See, e.g., Schilling v. Rogers, 363 U.S. 666, 677 (1960) (citation omitted) (holding that "the Declaratory Judgments Act is not an independent source of federal jurisdiction").

defendant owes him a clear nondiscretionary duty'"[19] was an adequate basis for denial of relief. Exhaustion aside, mandamus could not "properly issue"[20] here. Plaintiffs sought a writ of mandamus requiring Defendants to accept their second cost report. As discussed above, financial intermediaries do not have a duty to reopen cost reports – they can do so at their discretion. Plaintiffs also sought mandamus to stop collection proceedings. The collection proceedings were a direct result of Defendants' NPRs, which Plaintiffs could have appealed by properly initiating administrative review.

The district court properly determined that it lacked jurisdiction under the three bases for jurisdiction proffered by Plaintiffs. Because the district court lacked jurisdiction to hear any of Plaintiffs' claims, we need not address Plaintiffs' remaining arguments.

AFFIRMED.

---

[19] Fleming, 2006 WL 2880452, at *6 (quoting Ringer, 466 U.S. at 616).

[20] Ringer, 466 U.S. at 616.