NORTH AMERICAN AVIATION
PROPERTIES, INC.,
Petitioner,

v.

NATIONAL TRANSPORTATION
SAFETY BOARD,
Respondent.

No. 95–3033.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 8, 1996.

Decided Sept. 9, 1996.

Joseph D. Kuchta (argued and briefed), Kuchta & Brinker, Washington, DC, for Petitioner.

Robert S. Greenspan, U.S. Department of Justice, Appellate Staff, Civil Division, Washington, DC, Edward Himmelfarb (argued and briefed), U.S. Department of Justice, Civil Division, Appellate Staff, Washington, DC, David E. Bass, National Transportation Safety Board, Washington, DC, for Respondent.

Before MERRITT, Chief Judge; BOGGS, Circuit Judge; O'MEARA, District Judge.*

MERRITT, Chief Judge.

Petitioner North American Aviation Properties brings a generalized challenge to certain internal rules of practice issued by the National Transportation Safety Board through notice and comment rulemaking. The rules have not yet been applied to petitioner and may never be applied to it. The challenge is brought under 49 U.S.C. § 1153, which states that a person "disclosing a substantial interest" in a "final order" of the NTSB may apply for review of the order in the "appropriate court of appeals of the United States."[1] Because the NTSB rulemaking

---

* The Honorable John Corbett O'Meara, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Judicial review of Board action is governed by 49 U.S.C. § 1153, which states, in pertinent part:

(a) General.—The appropriate court of appeals of the United States ... may review a *final order* of the National Transportation Safety Board under this chapter. A *person disclosing a substantial interest* in the order may apply for review by filing a petition not later than 60 days after the order of the Board is issued.
(b) Persons seeking judicial review of aviation matters.—(1) A *person disclosing a substantial interest* in an *order related to an aviation matter*

issued by the Board under this chapter may apply for review of the order by filing a petition for review ... in the court of appeals of the United States *for the circuit in which the person resides or has its principal place of business.* The petition must be filed not later than 60 days after the order is issued. The court may allow the petition to be filed after the 60 days only if there was a reasonable ground for not filing within that 60-day period.

49 U.S.C. § 1153 (emphasis added). Thus, this Court has jurisdiction to hear an appeal of a "final order" of the NTSB when the appeal is brought by a resident of the Circuit who has disclosed a "substantial interest" in the order within 60 days of its issuance.

at issue in this case is not ripe for decision and is not therefore the type of a "final order" required by § 1153, the relevant special statutory review section, we decline to consider the merits of petitioner's challenge.

The National Transportation Safety Board generally oversees transportation safety in the United States by, for example, making annual reports to various governmental units, 49 U.S.C. § 1116(a), investigating aircraft and other transportation accidents, 49 U.S.C. §§ 1131, 1132, and reviewing certain actions taken by the Secretary of Transportation and the Federal Aviation Administration, 49 U.S.C. § 1133. The Board has broad authority to prescribe regulations to carry out these duties. 49 U.S.C. § 1113(f). In November 1994, the Board exercised this authority by adopting numerous revisions to its rules of practice governing air safety enforcement, with the intention of improving the efficiency and fairness of its procedures. *See* 59 Fed. Reg. 59042 (1994) (summary of general revisions to aviation rules of practice). In the process of formulating the new rules, the NTSB sought and received comments from interested parties, including petitioner, North American Aviation Properties. While many of petitioner's suggestions were adopted, some were not, leading petitioner to seek review of the rulemaking in this Court.

In the present case, the record pertaining to the merits of the petition appears fully developed. The NTSB, although not required in the issuance of procedural rules to conduct a notice and comment rulemaking, chose to do so anyway. The issued rules contain the NTSB's reasons for adoption, with citations to statutory authority.

Even though we do not know how the new rules will be applied, we could determine in a general way whether the NTSB exceeded its statutory mandate or was arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A), (C) (Administrative Procedure Act) ("[T]he reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; ... (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right"). But before we can reach the merits of the case, we should determine whether the petitioner has filed in the correct venue, whether the petitioner has standing to bring the case, and whether the case is ripe for adjudication. These "jurisdictional facts" are not developed in the administrative record because petitioner did not need to introduce evidence of jurisdiction in order to participate in the rulemaking. The NTSB sought comments from all interested parties, and petitioner made comments and a reply without regard to what the record for appeal would look like.

We must decide what to do when an administrative record, while sufficient for deciding the merits of a case, does not contain facts from which the Court can determine the petitioner's standing or the existence or ripeness of any case or controversy between the parties. While the present petitioner participated in the informal rulemaking proceeding before the NTSB, such participation is not a prerequisite for standing. Section 1153 gives *anyone* who discloses a "substantial interest" in a "final order" of the NTSB 60 days in which to file an appeal, but does not reveal how a court should know that a petitioner has a substantial interest or that a petitioner has standing due to a "direct impact" of the order on him.

The key to our decision lies in giving content to the term "final order" in § 1153. Courts, agencies, and commentators generally make a distinction between "orders" and "rules" that have been issued by administrative agencies. Those making the distinction are guided by two Supreme Court cases from the early twentieth century that distinguished between the judicial process and the political process for due process purposes: *Londoner v. Denver*, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103 (1908), and *Bi–Metallic Investment Co. v. State Board of Equalization*, 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915). The *Londoner/Bi–Metallic* teaching, as applied to administrative law, is that "orders" are usually adjudicative in nature and apply to a particular group, whereas "rules" are more legislative in nature and have general applicability. *See* Kenneth Culp Davis and Richard J. Pierce, Jr., 1 *Administrative*

*Law Treatise* § 6.1 at 227 (3rd Ed., Little, Brown, 1994).

Section 1153 operates straightforwardly for appeals from NTSB adjudications, for example an appeal of an order assessing a civil penalty under § 1155. Facts will exist in an adjudicative record to support the jurisdictional determination, and a direct injury will be easy to show—the agency will have acted against a particular party and will have done so either correctly or unlawfully. The appellate record, however, will often be devoid of jurisdictional facts when an appeal is not from an order but is instead from a general, procedural rulemaking such as the one at issue.

While specifically authorizing appeals of final orders, § 1153 does not, on its face, provide for any judicial review of NTSB rulemaking. Even so, courts that have interpreted the "final order" language of 49 U.S.C. § 1153[2] have read "order" to mean "any agency action capable of review on the basis of the administrative record," including *"regulations* promulgated through informal notice-and-comment rule-making." *Sima Products Corp. v. McLucas,* 612 F.2d 309, 313 (7th Cir.1980) (emphasis added). *Accord City of Alexandria v. Helms,* 728 F.2d 643, 646 (4th Cir.1984); *Northwest Airlines, Inc. v. Goldschmidt,* 645 F.2d 1309, 1313–14 (8th Cir.1981); *City of Rochester v. Bond,* 603 F.2d 927, 932–35 (D.C.Cir.1979); *San Diego Air Sports Center, Inc. v. FAA,* 887 F.2d 966, 968–69 (9th Cir.1989).

In the present case, however, the administrative record does not support our exercise of jurisdiction over this appeal. Accordingly, we find that the procedural regulations at issue do not constitute an appealable "final order" for the purposes of § 1153. The rules at issue in this appeal govern the procedures by which the NTSB reviews Department of Transportation and Federal Aviation Administration actions. The NTSB correctly describes the chance of these regulations ever negatively impacting petitioner as a "triple contingency": petitioner would not feel the effect until it (1) is involved in a specific type of enforcement proceeding with the FAA, (2) seeks appellate review by the NTSB of the FAA's adverse determination, and (3) has any of the seven challenged rules of practice applied adversely to it. The potential future effect of these rules on petitioner is thus a far cry from that needed to satisfy the ripeness requirement of *Abbott Laboratories v. Gardner* that "the impact of the regulations upon the petitioners [be] sufficiently direct and immediate as to render the issue appropriate for judicial review." 387 U.S. 136, 152, 87 S.Ct. 1507, 1517, 18 L.Ed.2d 681 (1967). Petitioner has not been placed in a dilemma, forced to comply with the regulations or face prosecution—the regulations do not apply directly to the petitioner at all.

The present regulations are more like those at issue in *Toilet Goods Association, Inc. v. Gardner,* 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967), a companion case to *Abbott Laboratories* that found an appeal *unripe* where "the impact of the administrative action could [not] be said to be felt immediately by those subject to it in conducting their day-to-day affairs." 387 U.S. at 164, 87 S.Ct. at 1524. As in *Toilet Goods,* here no "irremediable adverse consequences flow from requiring a later challenge" to these regulations. *Id.* at 164–65, 87 S.Ct. at 1525. In addition, "judicial appraisal" of the concededly purely legal issue of whether these regulations were properly adopted by the NTSB "is likely to stand on a much surer footing in the context of a specific application of [the regulations] than could be the case in the framework of the generalized challenge made here." *Id.* at 164, 87 S.Ct. at 1524. These rules may never be applied adversely to petitioner. It will be much easier for a court to determine whether the NTSB has exceeded its statutory mandate in promulgating the regulations when the court can see exactly how the agency intends to apply them. Subsequent NTSB orders issued pursuant to the new regulations, if they have a

---

**2.** Title 49 was recodified and renumbered in July 1994. Courts have not actually interpreted the new § 1153 in this context, but they have interpreted virtually identical language in its predecessor statute, 49 U.S.C. § 1903, and in the predecessor statute to 49 U.S.C. § 46110, which governs appeals of "orders" of the Secretary of Transportation and the Administrator of the Federal Aviation Administration.

specific adverse impact on petitioner, will be reviewable, first by the agency and then by a circuit court that should have a complete record from which to work.

The petition for review is DISMISSED.