# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 21, 2009

Charles R. Fulbruge III
Clerk

No. 07-31121

CHRISTOPHER J DRESSER

                                        Plaintiff - Appellant

v.

JOSEPH N INGOLIA, Individually and In His Official Capacity as the Chief
Administrative Law Judge for the United States Coast Guard; WALTER J
BRUDZINSKI, Individually and In His Official Capacity as a Coast Guard
Administrative Law Judge; THAD W ALLEN, In His Official Capacity as the
Commandant of the United States Coast Guard; KENNETH V WILSON;
ALYSSA L PALADINO

                                        Defendants - Appellees

JAMES M ELSIK

                                        Plaintiff - Appellant

v.

JOSEPH N INGOLIA, Individually and in His Official Capacity as the Chief
Law Judge for the United States Coast Guard; THAD W ALLEN, In His
Official Capacity as the Commandant of the United States Coast Guard;
TERRY M CROSS, In His Official Capacity as the Vice Commandant of the
United States Coast Guard; HANNA LIDDINGTON; GEORGE J JORDAN;
KENNETH V WILSON; MEGAN H ALLISON; JIM WILSON

                                        Defendants - Appellees

MURRAY R ROGERS

                                        Plaintiff - Appellant

v.

JOSEPH N INGOLIA, Individually and In His Offical Capacity as the Chief Administrative Law Judge for the United States Coast Guard; THAD W ALLEN, In His Official Capacity as the Commandant of the United States Coast Guard; TERRY M CROSS, In His Official Capacity as the Vice Commandant of the United States Coast Guard; HANNA LIDDINGTON; GEORGE J JORDAN; KENNETH V WILSON; MEGAN H ALLISON; JIM WILSON

Defendants - Appellees

---

Appeal from the United States District Court
for the Eastern District of Louisiana, New Orleans
No. 2:07-CV-1536

---

Before KING, HIGGINBOTHAM, and WIENER, Circuit Judges.

PER CURIAM:[*]

Three mariners allege that Coast Guard administrative law judges, clerks, and other staff conspired to "fix" the administrative proceedings relating to the revocation of their licenses. The district court dismissed without prejudice, reasoning, inter alia, that it lacked subject matter jurisdiction under the Administrative Procedure Act and that plaintiffs' Bivens claims were preempted by a comprehensive framework established to address and remedy their claims. Because we conclude that the district court lacked subject matter jurisdiction over both the Administrative Procedure Act and Bivens claims, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A. Factual Background

Three plaintiffs are part of the present appeal: Christopher Dresser, James Elsik, and Murray Rogers. Dresser is a marine engineer who volunteered for a drug screen test and tested positive for marijuana. On March 3, 1998, the Coast Guard initiated an investigation and Suspension and Revocation ("S&R") action against Dresser to revoke his engineering license and merchant mariner's document. Elsik is a tugboat captain and holder of a United States Coast Guard Master of Towing Vessels License Upon Great Lakes, Inland Waters and Western Rivers. On September 20, 2004, the Coast Guard initiated an S&R action against Elsik by filing a complaint regarding an alleged allision in Houma, Louisiana. Rogers is a tugboat mariner and holder of a United States Merchant Marine Officer License. On June 22, 2004, the Coast Guard initiated an S&R action against Rogers for actions related to the boarding of the M/V Bailey Ann in Morgan City, Louisiana.

All three plaintiffs allege that, over the course of their revocation proceedings, Chief Administrative Law Judge ("ALJ") Joseph Ingolia, other ALJs, and certain Coast Guard staff enforced an unwritten policy to rule against mariners in S&R proceedings. Plaintiffs put forward myriad allegations of Coast Guard misconduct in order to support their claims. For example, Dresser alleges that Chief ALJ Ingolia had threatened the ALJ presiding over his case, Walter Brudzinski, that he would lose his job unless he ruled for the Coast Guard. Dresser relies on an affidavit from former ALJ Jeffie Massey to support this claim. Elsik and Rogers allege that, on February 24, 2005, certain Coast Guard officials met in order to convince Chief ALJ Ingolia to pressure ALJ Massey to rule against Elsik and Rogers and to prepare the Commandant and Vice Commandant for an appeal should Chief ALJ Ingolia be unsuccessful in pressuring ALJ Massey. Elsik and Rogers point to Chief ALJ Ingolia's policy

letter to all ALJs, in which he allegedly advocated the Coast Guard's position on discovery requests in their S&R proceedings. Elsik and Rogers also allege that Chief ALJ Ingolia told ALJ Massey that she should always rule in the Coast Guard's favor and that she was the only ALJ not following this unwritten policy.

B. Procedural Background

i. Procedural background in the Coast Guard's appeals system

Each of the plaintiffs in the present case was the subject of a separate S&R proceeding in the Coast Guard. These distinct procedural histories are relevant to this appeal.

On March 3, 1998, the Coast Guard commenced an S&R proceeding against Dresser. After disclosing a potential conflict, the ALJ issued a Decision & Order ("D&O") finding that Dresser's positive drug test demonstrated his use of a dangerous drug and hence revoked Dresser's engineer's license and mariner's document.[1] Dresser appealed the decision to the Commandant, who affirmed the ALJ's D&O, and then to the National Transportation Safety Board ("NTSB"), which found that there was an appearance of a lack of impartiality and remanded the case for a new hearing. The new ALJ's D&O again revoked Dresser's engineer's license and mariner's document. Dresser appealed to the Commandant. His case was still pending before the Commandant when Dresser filed his complaint in the Eastern District of Louisiana and when the district court delivered its judgment.

On September 20, 2004, the Coast Guard commenced an S&R proceeding against Elsik. ALJ Massey, who presided over the hearing, granted Elsik's Motion for Interrogatories, though the Coast Guard objected to the related discovery deadlines. After the alleged February 24, 2005 meeting and Chief ALJ

---

[1] After the initial hearing but before the ALJ issued his D&O, Dresser had filed a products liability action in the Eastern District of Louisiana against the manufacturer of hemp seed oil that Dresser had ingested and that he alleged caused the positive test result. The ALJ's son represented the hemp seed oil manufacturer in the district court trial.

Ingolia's issuance of the policy guidelines, ALJ Massey dismissed the misconduct counts against Elsik with prejudice. The Coast Guard appealed ALJ Massey's dismissal to the Commandant, arguing that dismissal with prejudice was improper because it was based on discovery violations. The Commandant ruled in favor of the Coast Guard, reversed the dismissal, and remanded for further proceedings. On remand, the Coast Guard asked the ALJ to dismiss the S&R action without prejudice. ALJ Brudzinski complied with the Coast Guard's request on January 5, 2007. Elsik's license was neither suspended nor revoked as a result of these S&R charges.[2]

Rogers's S&R hearing was assigned to ALJ Massey, who approved discovery at Rogers's request. Similar to Elsik's case, the Coast Guard did not meet a deadline to respond to a subpoena. After inviting suggestions for sanctions from Rogers, ALJ Massey dismissed the entire case with prejudice on March 25, 2005. The Coast Guard appealed to the Commandant. Rogers's case was pending before the Commandant when he filed his complaint in the Eastern District of Louisiana and when the district court delivered its judgment.[3]

ii. Procedural background in the district court and after the district court's ruling

In federal district court, all three plaintiffs brought separate suits seeking declaratory and injunctive relief, writs of mandamus, and damages relating to the revocation of their licenses under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). Dresser filed his lawsuit against Chief ALJ Ingolia (individually and in his official capacity as Chief ALJ), ALJ Brudzinski (individually and in his official capacity as ALJ), Thad Allen (in

---

[2] Elsik's license was subsequently suspended for three months due to an unrelated allision, though such suspension was not relevant to the proceedings below.

[3] Dresser and Rogers thus had a similar procedural posture below: both of their Coast Guard appeals were pending at the time they filed their suits in the Eastern District of Louisiana and when the district court dismissed their claims without prejudice.

his official capacity as Coast Guard Commandant), Kenneth Wilson, and Alyssa Paladino. Elsik filed this lawsuit against Chief ALJ Ingolia (individually and in his official capacity as Chief ALJ), Thad Allen (in his official capacity as Coast Guard Commandant), Terry Cross (in his official capacity as Coast Guard Vice Commandant), Hanna Lidington, George Jordan, Kenneth Wilson, Megan Allison, and Jim Wilson. Rogers filed his lawsuit against the same defendants as Elsik.[4] The latter two proceedings were consolidated for hearing with Dresser's.[5]

The defendants filed a motion to dismiss under Rules 12(b)(1), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure. The district court granted in part and denied in part defendants' motion to dismiss. The court ruled, inter alia, that: (1) Dresser possessed standing because the ALJ's D&O was a sufficiently final agency action; (2) Elsik possessed constitutional standing because he adequately alleged an economic impact resulting from the investigation; (3) Elsik failed to exhaust his administrative remedies because the Coast Guard had dismissed its action against him and there was thus no final agency action; (4) Dresser had exhausted his administrative remedies under the Administrative Procedure Act ("APA") because the ALJ's D&O was a final agency action; (5) plaintiffs' Bivens claims were not preempted by the administrative appeals process in the Coast Guard; (6) the ALJs presiding over the plaintiffs' revocation hearings were entitled to absolute judicial immunity but Chief ALJ Ingolia was not; (7) the defendant staff members and clerks were entitled to quasi-judicial immunity; and (8) all defendants except Chief ALJ Ingolia were protected from suit by qualified immunity.

---

[4] The defendants listed in all three actions are hereinafter referred to as "the defendants."

[5] Rogers did not participate in the proceedings below because his procedural posture was similar to Dresser's and his factual history was generally similar to Elsik's.

Subsequently, the district court ruled on defendants' Motion for Reconsideration and more fully addressed the issues currently appealed. First, the court granted defendants' motion in part on the grounds that the plaintiffs failed to exhaust their administrative remedies. It held that 33 C.F.R. § 20.1101(b)(1)[6] was "clear on its face" that an ALJ decision was final unless appealed to the Commandant and that, if appealed to the Commandant, administrative remedies were not exhausted until the Commandant ruled. Since Dresser's and Rogers's appeals before the Coast Guard were pending, they had not exhausted their remedies under the finality requirement. Also, the court reiterated that Elsik's appeal had been dismissed, thus only affecting his rights on the contingency of future administrative action and not constituting a final, appealable decision. Second, the court granted the motion in part on the grounds that the Coast Guard's administrative appeal system preempted plaintiffs' Bivens claims. The court concluded that the APA granted "federal courts broad powers to review agency action, including constitutional violations." This framework, it reasoned, was "comprehensive . . . to address and remedy claims of constitutional violations in either the S&R hearings themselves or upon review in federal court." Accordingly, it determined that a non-statutory Bivens remedy was unnecessary under Schweiker v. Chilicky, 487 U.S. 412 (1988). Finally, the district court denied in part defendants' Motion for Reconsideration on the grounds that Chief ALJ Ingolia was not entitled to qualified immunity. The court reasoned that plaintiffs had established a constitutional due process violation and that Chief ALJ Ingolia had acted in an

---

[6] Though the district court refers to 33 C.F.R. § 22.1101(b)(1), the relevant provisions have since been moved to § 20.1101(b)(1).

objectively unreasonable manner by improperly influencing other ALJs. The district court then dismissed the case without prejudice.[7]

The plaintiffs filed a timely notice of appeal in this court. While the appeal was pending, the Commandant issued its decisions in Dresser's and Rogers's cases. In Dresser's case, the Commandant affirmed the ALJ's D&O and also granted Dresser leave to submit any supplemental filings or briefs. In Rogers's case, the Commandant ruled that ALJ Massey had abused her discretion when she dismissed Rogers's case with prejudice as a sanction for the Coast Guard's failure to comply with a subpoena.[8]

## II. STANDARD OF REVIEW

"We review dismissals for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) de novo." Williams v. Wynne, 533 F.3d 360, 364–65 (5th Cir. 2008). A district court's dismissal of a case for want of subject matter jurisdiction due to a failure to exhaust administrative remedies is reviewed de novo as a question of law. Taylor v. U.S. Treasury Dep't, 127 F.3d 470, 475 (5th Cir. 1997). Additionally, a district court's interpretation of a statute or regulation is a question of law that we review de novo. Teemac v. Henderson, 298 F.3d 452, 456 (5th Cir. 2002).

This court also reviews de novo a district court's grant or denial of a Rule 12(b)(6) motion to dismiss, Frank v. Delta Airlines, Inc., 314 F.3d 195, 197 (5th Cir. 2002), "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff," Stokes v. Gann, 498 F.3d 483, 484 (5th

---

[7] The district court also discussed issues relating to mandamus and abstention. The plaintiffs fail to challenge these determinations on appeal; therefore, they have waived these arguments. See DSC Commc'ns Corp. v. Next Level Comm'ns, 107 F.3d 322, 326 n.2 (5th Cir.1997) ("[A] party who fails to raise an issue in its initial brief waives the right to review of that issue.").

[8] Though the defendants have supplemented the record with the Commandant's decision in Rogers's case, we lack the Commandant's decision in Dresser's case.

Cir. 2007). Dismissal is appropriate when the plaintiff has not alleged "enough facts to state a claim to relief that is plausible on its face" and has failed to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965, 1974 (2007).

## III. DISCUSSION

Reviewing the district court's order dismissing plaintiffs' cases without prejudice, we agree that the district court lacked subject matter jurisdiction over plaintiffs' claims for judicial interdiction and review under the APA. However, we do not reach the district court's conclusion that plaintiffs' Bivens claims are preempted because we conclude that the district court lacked subject matter jurisdiction over plaintiffs' Bivens claims.

A. Plaintiffs' Claims Under the APA

"When an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule, the agency action is 'final for the purposes of this section' and therefore 'subject to judicial review'" under the APA. Darby v. Cisneros, 509 U.S. 137, 146 (1993) (quoting 5 U.S.C. § 704); see also United States v. Menendez, 48 F.3d 1401, 1411 (5th Cir. 1995). Section 10(a) of the APA provides that a person is entitled to judicial review if he "suffer[s a] legal wrong because of agency action, or [is] adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Section 10(c) of the APA states that "final agency action for which there is no other adequate remedy in a court" is subject to judicial review and that a "preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." 5 U.S.C. § 704. Two conditions must be met for agency action to be final. Bennett v. Spear, 520 U.S. 154, 177 (1997). "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." Id. at 177–78 (internal citations and

quotation marks omitted). Second, "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." Id. at 178 (internal citations and quotation marks omitted).

Coast Guard regulations state that, "[u]nless appealed . . . an ALJ's decision becomes final action of the Coast Guard 30 days after the date of its issuance." 33 C.F.R. § 20.1101(b)(1). If a mariner appeals an ALJ decision to the Commandant, the Commandant's decision is final unless the case is remanded. 33 C.F.R. § 20.1101(b)(2) ("If the Commandant issues a decision . . . the decision constitutes final action of the Coast Guard on the date of its issuance."); 46 C.F.R. § 5.805(c) ("The Decision of the Commandant on Review, shall be the final agency action in the absence of a remand."). In the present case, the district court held that there was no final agency action by the Coast Guard in Dresser's and Rogers's cases because their appeals were still pending with the Commandant. We agree with the district court's conclusion that "[t]he regulation is clear on its face that an ALJ's decision is 'final' action, unless the decision is appealed," and that, on these facts, "Dresser's [and Rogers's] claims are barred by the APA's finality requirement."

In their briefs to this court, Dresser and Rogers fail to challenge the district court's conclusion that the agency action is not final until the Commandant completes his review of the claims. Instead, they contend that the district court erred in failing to apply an exception to the finality rule that this court articulated in United States v. Feaster, 410 F.2d 1354, 1366 (5th Cir. 1969) ("[J]udicial interdiction of the administrative process [is possible] where there is a substantial showing that Board action has violated the constitutional rights of the complaining party." (internal quotation marks omitted)). Dresser and Rogers have not succeeded in identifying any case in the forty years since Feaster was decided in which the complaining party made the requisite showing.

A case containing only allegations, albeit serious, should not be the first. We decline to apply any Feaster exception here.

Furthermore, this court continues to lack jurisdiction because a "party invoking the jurisdiction of the court cannot rely on events that unfolded after the filing of the complaint to establish its standing." Kitty Hawk Aircargo, Inc. v. Chao, 418 F.3d 453, 460 (5th Cir. 2005) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 570 n.4 (1992)); see also Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830 (1989) ("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed."). The Seventh Circuit has dealt with a similarly "gnarled procedural posture" where (1) plaintiff's NTSB appeal was still pending, (2) plaintiff appealed to a federal district court, and (3) the NTSB ruled on its appeal between the district court order and the Seventh Circuit's decision. Gaunce v. deVincentis, 708 F.2d 1290, 1293 n.5 (7th Cir. 1983). Finding that the NTSB's final order was "not of jurisdictional consequence," the court stated that "[i]t would be unprincipled if our jurisdiction was dependent on the happenstance of an agency rendering its final order subsequent to the filing of the notice of appeal, but prior to our consideration of the appeal." Id. at 1294. The court vacated the district court's judgment and remanded with instructions to dismiss the complaint for lack of subject matter jurisdiction. Id. at 1291. For our purposes, we agree that Dresser and Rogers cannot now claim that subject matter jurisdiction exists merely because the Commandant ruled during the pendency of their appeal.

Finally, we agree with the district court that Elsik also has not exhausted his administrative remedies by failing to meet the APA's finality requirement. The Coast Guard dismissed its claim against him without prejudice. Though Elsik claims that he may be harmed if the Coast Guard again commences proceedings against him, the district court correctly reasoned that "a non-final agency order is one that 'does not of itself adversely affect complainant but only

affects his rights adversely on the contingency of future administrative action.'" Peoples Nat'l Bank v. Office of Comptroller of Currency of the U.S., 362 F.3d 333, 337 (5th Cir. 2004) (quoting Rochester Tel. Corp. v. United States, 307 U.S. 125, 130 (1939)).[9]

We thus affirm the district court's dismissal without prejudice of plaintiffs' claims arising under the APA.

B. Plaintiffs' Bivens Claims

The district court found that plaintiffs' Bivens claims are preempted by a comprehensive framework that allowed them to supplement the Commandant's record and to subsequently avail themselves of federal court review. However, the court's consideration of Bivens preemption was premature because it lacked subject matter jurisdiction over the claims.

Generally, "plaintiffs should not be able to circumvent administrative review through suit in federal court." Zephyr Aviation, L.L.C. v. Dailey, 247 F.3d 565, 572 (5th Cir. 2001). In the Federal Aviation Administration ("FAA") context, this court has stated that "parties may not avoid administrative review simply by fashioning their attack on an FAA decision as a constitutional tort claim against individual FAA officers." Id. Though federal district courts "have subject matter jurisdiction over Bivens claims raising broad constitutional challenges to FAA practices," they lack jurisdiction over claims that are "inescapably intertwined with a review of the procedures and merits

---

[9] Though Elsik also argues that an exception to the finality rule should apply, we find such arguments unconvincing in light of our previous statements that such an exception is "extraordinary" and available only when based on an "unambiguous" constitutional violation. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Nat'l Ass'n of Secs. Dealers, Inc., 616 F.2d 1363, 1370–71 (5th Cir. 1980) (noting that "only exceptional circumstances justify court intervention in the administrative process prior to exhaustion of administrative remedies" and that an exception to the exhaustion requirement requires "a clear and unambiguous statutory or constitutional violation."); Coca-Cola Co. v. FTC, 475 F.2d 299, 304 (5th Cir. 1973) ("The extraordinary remedy of judicial intervention . . . is unavailable unless necessary to vindicate an unambiguous statutory or constitutional right.").

surrounding an FAA order." Id. (internal quotation marks omitted). In Zephyr Aviation, a case of first impression regarding the exhaustion requirement and the availability of Bivens claims, this court ruled that the district court possessed subject matter jurisdiction over the plaintiff's Bivens claims despite plaintiff's failure to exhaust administrative remedies in the FAA appeals system. Id. at 573. We reasoned that such jurisdiction existed because "Zephyr's claims [did] not relate to an FAA order currently pending against it." Id. at 572. Instead, the plaintiff was seeking "monetary relief for alleged extra-procedural and unconstitutional actions by FAA inspectors," and "the administrative appeal procedure outlined in the Aviation Act" could not provide such relief. Id. This court thus distinguished the holdings of other circuits by stating that Zephyr Aviation's case did not "implicate an FAA order that [was] currently in place" and therefore "could not function as a collateral attack on an FAA order or action." Id.

Though this court has not addressed this issue since Zephyr Aviation, other circuit courts have concluded that a district court lacks subject matter jurisdiction when due process claims are "inescapably intertwined" with a review of the merits and procedure of an agency's decision. See, e.g., Merritt v. Shuttle, Inc., 187 F.3d 263 (2d Cir. 1999); Tur v. FAA, 104 F.3d 290 (9th Cir. 1997); Green v. Brantley, 981 F.2d 514 (11th Cir. 1993). In Merritt v. Shuttle, the Second Circuit held that a district court lacked subject matter jurisdiction over a pilot's Bivens claim because the statutory scheme provided for exclusive review directly in the court of appeals. The pilot in Merritt alleged that FAA officials had "failed to conduct a meaningful investigation and instead conspired to conceal their own negligence" by blaming the plaintiff for flying in bad weather. 187 F.3d at 266. The court reasoned that plaintiff's Fifth Amendment due process claim was "'inescapably intertwined' with review of the revocation order" and that, despite plaintiff styling his Bivens claim in constitutional terms, he was ultimately

challenging "the manner in which the officials conducted themselves during and after the June 24 incident" and disputing "the ALJ's factual conclusion that he bore responsibility for an ill-considered decision to take off." Id. at 271. Such analysis would thus "result in new [district court] adjudication over the evidence and testimony adduced in the prior revocation hearing, the credibility determinations made by the ALJ, and, ultimately, the findings made by the ALJ during the course of the proceedings." Id. (footnotes, internal quotation marks, and alterations omitted). Such review, it reasoned, was inappropriate because the plaintiff "failed to complete the judicial review process by either perfecting an appeal to the NTSB or filing a petition for review in the appropriate court of appeals." Id.

Similarly, in Green v. Brantley, the Eleventh Circuit found that the district court lacked subject matter jurisdiction over plaintiff's Bivens claims against FAA officials. 981 F.2d at 516. The plaintiff alleged that the officials violated his due process rights by "conspir[ing] to present false accusations against him with the intent to cause his financial ruin." Id. at 518. The court concluded that the district court had no jurisdiction over the appeal because the FAA's termination of Green's Designated Pilot Examiner certificate was an appealable order that conferred exclusive jurisdiction on a federal court of appeals after administrative review. Id. at 519–21. Again, the court reasoned that "[t]he merits of Green's Bivens claims [were] inescapably intertwined with a review of the procedures and merits surrounding the FAA's order." Id. at 521.

The Ninth Circuit's approach is also instructive. In Mace v. Skinner, the court ruled that the district court possessed jurisdiction over a Bivens claim because it constituted a "broad challenge to allegedly unconstitutional FAA practices." 34 F.3d 854, 859 (9th Cir. 1994). In that case, an aircraft engineer alleged that: (1) "the FAA was not authorized to revoke certificates as a sanction for violating aviation safety regulations, nor was the NTSB authorized to try

14

such revocations"; (2) "only fines were authorized as a sanction for safety violations"; (3) "the FAA failed to promulgate rules relating to the revocation procedures, to give the public notice of and an opportunity to comment on such rules, and to publish them in the Federal Register"; and (4) "the FAA's emergency procedures failed to accord Mace adequate notice of the revocation of his certificate." Id. at 856.

In the present case, the district court incorrectly assumed that it had subject matter jurisdiction over plaintiffs' Bivens claims when it concluded that there was "a comprehensive framework to address and remedy claims of constitutional violations." In fact, the district court lacked subject matter jurisdiction over the plaintiffs' Bivens claims because such claims were inescapably intertwined with a review of the procedure and merits surrounding their respective D&Os. Unlike in Zephyr Aviation, where the plaintiff did not have to exhaust its administrative remedies because it was asserting claims that did not relate to an "order currently pending against it," here the allegations of ALJs "fixing" cases necessitates a review of the ALJs' decision making and the merits of each plaintiff's arguments regarding whether his license should have been revoked. Also, unlike the plaintiff in Mace, plaintiffs are not broadly challenging the constitutionality of Coast Guard authority to bring revocation actions or its failure to promulgate rules relating to revocation procedures. Rather, plaintiffs' Bivens claims resemble those of the plaintiff in Merritt in that they require a "new adjudication over the evidence and testimony adduced in the prior revocation hearing, the credibility determinations made by the ALJ, and, ultimately, the findings made by the ALJ during the course of the proceedings." 187 F.3d at 271 (internal quotation marks, alterations, and citations omitted). We thus conclude that the district court lacked subject matter jurisdiction over plaintiffs' Bivens claims and that exercising jurisdiction over such claims "circumvent[s] administrative review through suit in federal court." Zephyr

15

Aviation, 247 F.3d at 572.  Based on this reasoning, we affirm the district court's judgment dismissing without prejudice plaintiffs' Bivens claims.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment dismissing the plaintiffs' claims without prejudice.