RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0304p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

─────────────────

BRADLEY J. BURDUE,

*Petitioner,*

*v.*

FEDERAL AVIATION ADMINISTRATION,

*Respondent.*

No. 13-4029

On Petition for Review from the
Federal Aviation Administration.
No. DART710615GL.

Decided and Filed:  December 23, 2014

Before:  KEITH, BATCHELDER, and STRANCH, Circuit Judges.

─────────────────

#### COUNSEL

**ON BRIEF:**  Richard G. Martin, FRASER CLEMENS MARTIN & MILLER LLC, Perrysburg, Ohio, for Petitioner.  Bradley J. Preamble, FEDERAL AVIATION ADMINISTRATION, Washington, D.C., for Respondent.

─────────────────

#### OPINION

─────────────────

ALICE M. BATCHELDER, Circuit Judge.  Bradley J. Burdue petitions for review of a Federal Aviation Administration ("FAA") order revoking his certification as an Airworthiness Representative-Maintenance ("DAR-T").  49 U.S.C. § 44702(d)(2) authorizes the FAA to rescind this designation "at any time for any reason."  We decline to review the merits of Burdue's statutory claims because the FAA's decision to revoke Burdue's certification "is

1

committed to agency discretion by law." 5 U.S.C. § 701(a)(2). We also decline to review the merits of Burdue's constitutional claims because they should be—and actually have been—brought in a district court action pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971). We also deny as moot Burdue's motion to supplement the administrative record. Accordingly, we deny Burdue's petition for review.

**I.**

49 U.S.C. § 44702(d)(1) authorizes the FAA to "delegate to a qualified private person . . . a matter related to—(A) the examination, testing, and inspection necessary to issue a certificate under this chapter; and (B) issuing the certificate." The FAA "may rescind a delegation under this subsection at any time for any reason the Administrator considers appropriate." *Id*. § 44702(d)(2). These "qualified private person[s]" remain subject to the "regulations, supervision, and review the Administrator may prescribe." *Id*. § 44702(d)(1). 14 C.F.R. § 183.13(c) requires that the designation at issue in this case—DAR-T—contain an expiration date. Section 183.15(b)(6) emphasizes, however, that "[a] designation made under this subpart terminates: For any reason the Administrator considers appropriate."

Burdue was appointed as a DAR-T on December 28, 2001. A DAR-T is a private person authorized by the FAA to conduct aircraft inspections and issue airworthiness certificates. His certification expired at the end of each year, but each year the FAA renewed it.

On March 14, 2013, Burdue's supervisors were informed of "some issues" related to Burdue's export certifications for aircraft being sold overseas. The FAA's Special Emphasis Investigations Team ("SEIT") later concluded that Burdue had engaged in "conduct inconsistent with the care, judgment, and integrity normally associated with, and expected of, an FAA designee." The SEIT "found that Mr. Burdue performed multiple aircraft inspections out of his assigned geographic area without authorization." Admin. R. 1. It also concluded that Burdue had issued export certificates to aircraft owned by Burdue and his wife, "[a] clear conflict of interest." *Ibid.* Attached to the SEIT's findings were thirteen "Items of Proof" on which the SEIT based its findings, including particular aircraft registration numbers, inspection numbers, and dates.

Inspector David Lindsey of the Cleveland Flight Standards District Office ("FSDO") showed the SEIT's findings to Burdue and encouraged him to respond. Burdue then responded to these findings in a lengthy letter sent to Inspector Lindsey. Admin. R. 95–97. After reviewing the SEIT's findings and Burdue's response, J.D. Martin, the General Aviation Technical Support Branch Manager, recommended to Leroy Moore, Manager of the Cleveland FSDO, that Burdue's designation be terminated "for cause." Admin. R. 102. Martin's recommendation analyzed both the SEIT's findings and Burdue's response.

Moore revoked Burdue's certificate on April 29, 2013. Burdue's termination letter indicated that the revocation was being made pursuant to both the "for cause" provision of 14 C.F.R. § 183.15(b)(4) and the discretionary-revocation provision of 14 C.F.R. § 183.15(b)(6). The letter apprised Burdue of his right to request an appeal of the decision within fourteen calendar days, at which time Burdue "should include any evidence or statement concerning this matter." Admin. R. 103.

On May 15, 2013, Burdue submitted a seventeen-page "Appeal Brief," which included a number of supporting documents. Moore sent a letter to Burdue two days later acknowledging receipt of Burdue's request for an appeal and the Appeal Brief itself. On June 21, 2013, over a month after the appeal deadline, Burdue submitted an Appeal Brief Supplement, which highlighted information gleaned from documents Burdue had obtained from the FAA after he filed a Freedom of Information Act ("FOIA") request. Admin. R. 183–88. Although it was untimely, Martin appears to have provided the Appeal Brief Supplement and its attachments to the appeal panel no later than June 28, 2013. On July 2, 2013, Burdue was informed that "[t]he Appeal Panel was convened and reviewed your appeal documents. It is the Panel's decision that the termination of your DAR designation . . . be upheld." Admin. R. 189.

Prior to filing this petition, Burdue brought a *Bivens* action in the U.S. District Court for the Northern District of Ohio claiming a violation of his Fifth Amendment right to due process and wrongful termination. Burdue requested that the district court order the FAA to revoke his termination and purge its files of any references to his "for cause" termination, order an injunction preventing his termination "without providing full procedural due process," and award damages. Burdue then filed this petition on August 30, 2013. FAA administrator Michael

Huerta moved to stay the *Bivens* action pending this Court's resolution of Burdue's petition. The district court then ordered a stay of Burdue's district court proceedings, "declin[ing] to engage in the improper act of adjudicating the issue of the Sixth Circuit's jurisdiction over the plaintiff's pending appeal."

## II.

We first turn to Burdue's statutory claims. Our jurisdiction arises under 49 U.S.C. § 46110(a), which provides that "[a] person disclosing a substantial interest in an order issued by . . . the Administrator of the Federal Aviation Administration . . . in whole or in part under this part, . . . may apply for review of the order by filing a petition for review . . . in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business." Section 44702(d)(2), which permits the FAA to "rescind a delegation . . . at any time for any reason," is "under this part." *See* 49 U.S.C. subt. VII, pt. A. Thus, this "court has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order." *Id.* § 46110(c).

## A.

Burdue contends initially that the termination of his designation is not an "order" over which we possess exclusive jurisdiction under § 46110(a), (c). The term "order" has been given an "expansive construction." *Atorie Air, Inc. v. FAA*, 942 F.2d 954, 960 (5th Cir. 1991). Only two requirements must be met.[1]

First, courts have uniformly interpreted the jurisdictional exclusivity provision of § 46110(a), (c) and its predecessor to require finality. *See, e.g.*, *Aerosource, Inc. v. Slater*, 142 F.3d 572, 578 (3d Cir. 1998) ("Thus, we conclude that to be reviewable under section 46110(a), an 'order' must be final, but need not be a formal order, the product of a formal decision-making process, or be issued personally by the Administrator. Of course, it also must impose an obligation, deny a right, or fix some legal relationship."). In this case, the finality requirement has been met. Burdue's designation was terminated, and Burdue exhausted the

---

[1]Some courts consider these characteristics as elements of what constitutes an "order," while others use these characteristics to determine whether an "order" is reviewable.

administrative appeals process provided by FAA regulations. This termination fixes a legal relationship between Burdue and the FAA, has a direct and immediate effect on his business, and, Burdue argues, denies him a legal right. Burdue's termination is final, and it is also final agency action for purposes of the Administrative Procedure Act ("APA"), 5 U.S.C. § 704.

Second, courts have also required that "the 'order' . . . be predicated on an administrative record sufficient to allow a court to engage in a meaningful review." *Aerosource*, 142 F.3d at 578; *see also Sima Prods. Corp. v. McLucas*, 612 F.2d 309, 314 (7th Cir. 1980). We have required something similar prior to exercising the exclusive circuit-court jurisdiction over a "final order" of the National Transportation Safety Board. *See N. Am. Aviation Props., Inc. v. Nat'l Transp. Safety Bd.*, 94 F.3d 1029, 1031 (6th Cir. 1996). This requirement, however, is not a demanding one. *See, e.g.*, *Atorie Air*, 942 F.2d at 960 (holding that an administrative record containing only the petitioner's surrendered FAA certificates sufficed to review a claim of procedural impropriety); *Green v. Brantley*, 981 F.2d 514, 519 (11th Cir. 1993) (finding an "order" where "the administrative record consists of Brantley's investigation of Green's alleged misconduct, letters written by Green and his attorney, and various letters from Smith, Castleberry, and another FAA official"); *S. Cal. Aerial Advertisers' Ass'n v. FAA*, 881 F.2d 672, 673, 676 (9th Cir. 1989) (holding that a single letter announcing the FAA's order prohibiting certain aircraft from travelling through certain airspace near Los Angeles was a sufficient record for the court to review the petitioner's procedural due process claims). And this requirement is met easily in this case where the administrative record consists of Burdue's termination notice, Burdue's response and his appeal brief, the decision of the appeal panel, and the SEIT's lengthy memorandum. At the very least, the record "suffice[s] to permit review of a claimed procedural impropriety." *Atorie Air*, 942 F.2d at 960.

**B.**

The APA provides a general cause of action for parties "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Although there is a presumption favoring judicial review, if the challenged "agency action is committed to agency discretion by law," this presumption and the cause of action provided by § 702 no longer apply. *See id.* § 701(a).

In construing § 701(a)(2) for the first time, the Supreme Court in *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977), described this exception as "very narrow," and "applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Id.* at 594 (quoting S. Rep. No. 79-752, at 26 (1945)). This exception did apply in *Webster v. Doe*, 486 U.S. 592 (1988), where the Supreme Court held that termination decisions made by the Director of the Central Intelligence Agency were committed to agency discretion by law under a statute that authorized the director to terminate employment "in his discretion . . . whenever he shall deem such termination necessary or advisable in the interests of the United States." (citing 61 Stat. 495, 498 (July 26, 1947)). The Court said that this provision

> fairly exudes deference to the Director, and appears to us to foreclose the application of any meaningful judicial standard of review. Short of permitting cross-examination of the Director concerning his views of the Nation's security and whether the discharged employee was inimical to those interests, we see no basis on which a reviewing court could properly assess an Agency termination decision. The language of § 102(c) thus strongly suggests that its implementation was "committed to agency discretion by law."

*Id.* at 600.

Two sister circuits have considered this exact question—whether § 44702(d)(2) commits the decision to rescind a designation to the FAA as a matter of law. Both have said that it does. In *Steenholdt v. FAA*, 314 F.3d 633 (D.C. Cir. 2003), the D.C. Circuit concluded that the nonrenewal of a designated engineering representative designation was a decision "committed to agency discretion by law" because § 44702(d)(2) "give[s] the Administrator of the FAA unfettered discretion." *Id.* at 638. "With regard to the substance of the FAA's nonrenewal decision, there is no law to apply." *Id.* The court rejected the former designee's argument that § 46110 permits review for "substantial evidence":

> [T]his argument begs the question: substantial evidence of what? For any decision made by the Administrator, there will always be substantial evidence that the decision was made "at any time for any reason." Because there are no constraints on the Administrator's discretion, there certainly are no judicially manageable standards by which to judge the Administrator's action. Petitioner's mistake is that he confuses the presence of a standard of review with the existence of law to apply.

*Id.* at 639.  The Ninth Circuit reached the same result when it determined that § 44702(d)(2)'s predecessor "does not set out specific factors for an FAA administrator to consider in determining whether to rescind a delegation of power . . . there is no judicially-manageable standard by which we may review the FAA administrator's decision not to renew [petitioner's] designation as Pilot Examiner." *Adams v. FAA*, 1 F.3d 955, 956 (9th Cir. 1993) (per curiam); *see also Greenwood v. FAA*, 28 F.3d 971, 974–75 (9th Cir. 1994) ("Greenwood argues that the FAA's decisions to suspend and not to renew his PED were arbitrary and capricious.  We cannot review these contentions, however, because we lack jurisdiction to review the merits of an FAA decision to suspend or not to renew a PED.").

Our reasoning in *Joelson v. United States*, 86 F.3d 1413 (6th Cir. 1996), also is relevant.  We refused to review the termination of a private bankruptcy trustee where no statute governed removal and the appointing officer had informed the trustee that he was subject to discretionary removal "at any time for reasons associated with [his] application or background check, or for unsatisfactory performance."  *Id.* at 1415–16, 1419 & n.1.  We concluded that "the relevant statute and regulations promulgated pursuant to it are broadly drawn, and do not establish 'meaningful standards, criteria or priorities' for a court to review a U.S. Trustee's decision to remove a panel member from active case rotation."  *Id.* at 1419.

A more permissive statute than the one present in this case can hardly be imagined.  By its very terms, § 44702(d)(2) places "no constraints on the Administrator's discretion." *Steenholdt*, 314 F.3d at 639.  Review would not only be improper, but it would also be futile.  Paraphrasing *Steenholdt*, the mere fact that the termination decision was made will always provide substantial evidence that the termination decision was made "for any reason," however ludicrous the reason might be.  *See id.*  The FAA could only have abused its discretion, for instance, if it terminated Burdue outside of the space-time continuum.  And the fact that Burdue's designation was terminated "for cause," instead of merely not renewed, is irrelevant when determining whether there is "law to apply."  Although Burdue's termination letter

provides reasons for his termination, § 44702(d)(2) authorizes the FAA to rescind Burdue's designation whether cause exists or not.[2]

## III.

The fact that an agency's decision is committed to its discretion by law does not, ipso facto, preclude review of constitutional claims. Such claims are reviewable "in part to avoid the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Webster*, 486 U.S. at 603; *see also Joelson*, 86 F.3d at 1420 ("[O]ur decision that panel membership determinations are committed to the discretion of the U.S. Trustees does not automatically foreclose our review of Joelson's constitutional claims."). Which federal courts—district courts or courts of appeals—may review Burdue's constitutional claims is the question to which we turn next.[3]

Even though § 46110(c) vests this Court with exclusive jurisdiction "to affirm, amend, modify, or set aside any part of the order," a district court may review "general collateral challenges to unconstitutional practices and policies," *see McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991), or "a constitutional claim based on an individual discharge," *see Webster*, 486 U.S. at 603–04. A *Bivens* action may be brought provided that the merits of the claim are not "inescapably intertwined with a review of the procedures and merits surrounding the FAA's order." *Green v. Brantley*, 981 F.2d 514, 521 (11th Cir. 1993); *see also Dresser v. Ingolia*, 307 F. App'x 834, 843 (5th Cir. 2009) (per curiam) ("[T]he district court lacked subject matter jurisdiction over the plaintiffs' *Bivens* claims because such claims were inescapably intertwined with a review of the procedure and merits surrounding their respective [orders].").

In *Green*, the Eleventh Circuit held that a district court lacked subject matter jurisdiction over a former designated pilot examiner's *Bivens* action because his claims should have been brought in the court of appeals. 981 F.2d at 521. The *Bivens* action was "an impermissible

---

[2]Under the doctrine outlined in *Accardi v. Shaughnessy*, 347 U.S. 260, 265–67 (1954), a party may always challenge an agency's failure to abide by its own regulations. *See also Sheble v. Huerta*, No. 13-1136, 2014 WL 2853719, at *2 (D.C. Cir. June 24, 2014). In this case, though, "Burdue does not claim that the FAA did not follow its new and very limited procedure for DAR-T's. He challenges the procedure itself." Reply Br. 19. *Accardi* does not apply to this challenge.

[3]As noted above, Burdue has already filed a *Bivens* action in the U.S. District Court for the Northern District of Ohio, which has been stayed pending resolution of this petition.

collateral challenge to the agency order" because the former designee "had an avenue for vindicating his substantive and procedural rights" in the court of appeals, and his *Bivens* claims were "inescapably intertwined with a review of the procedures and merits surrounding the FAA's order." *Id.*; *see also Dresser*, 307 F. App'x at 843 ("[H]ere the allegations of ALJs 'fixing' cases necessitates a review of the ALJs' decision making and the merits of each plaintiff's arguments regarding whether his license should have been revoked. Also, unlike the plaintiff in *Mace*, plaintiffs are not broadly challenging the constitutionality of Coast Guard authority to bring revocation actions or its failure to promulgate rules relating to revocation procedures. Rather, plaintiffs' *Bivens* claims resemble those of the plaintiff in *Merritt* in that they require a new adjudication over the evidence and testimony adduced in the prior revocation hearing, the credibility determinations made by the ALJ, and, ultimately, the findings made by the ALJ during the course of the proceedings." (internal quotation marks and citations omitted)).

The Ninth Circuit distinguished *Green* in *Mace v. Skinner*, 34 F.3d 854 (9th Cir. 1994), where the court permitted a *Bivens* action based on a revoked aircraft-mechanic certificate. First, the court reasoned that the former mechanic was not seeking to "affirm, modify, or set aside" an FAA order because he was seeking damages. *Id.* at 858 (alterations and internal quotation marks omitted). Second, he brought "a broad challenge to allegedly unconstitutional FAA practices" pertaining to the procedures surrounding the revocation of his certificate. *Id.* at 859. Thus,

> the administrative record for a single revocation would have little relevance to Mace's constitutional challenges here. In addition, any examination of the constitutionality of the FAA's revocation power should logically take place in the district courts, as such an examination is neither peculiarly within the agency's "special expertise" nor an integral part of its "institutional competence."

*Id.* at 859 (citation omitted). Thus, actions for damages based on an individual termination fall outside the terms of § 46110(c)'s jurisdictional exclusivity, as do "general collateral challenges to unconstitutional practices and policies." *McNary*, 498 U.S. at 492.

In a pre-*McNary* case, we considered whether the district court had jurisdiction over facial constitutional challenges to the FAA's decision to revoke a pilot's license. *See Robinson v. Dow*, 522 F.2d 855 (6th Cir. 1975). Although the pilot sought damages (in addition to declaratory and injunctive relief), we affirmed the district court's dismissal, holding that the

administrative exhaustion doctrine, in conjunction with the circuit-court exclusivity provision, mandated "ultimate review in the Court of Appeals." *Id.* at 858. Accordingly, we concluded that "[i]t is clear that in this [] forum the litigant is free to raise his constitutional issues . . . . [T]he Administrator's order is not subject to collateral attack in the district court." *Ibid.*

To the extent that *Robinson* governs a damages action premised on an alleged denial of constitutional procedural due process rights, *Robinson*'s holding has been superseded by *McNary*. Burdue's constitutional claims are broad challenges to FAA procedures and are not contingent on the merits of a particular FAA order.[4] His claims allege procedural due process violations, including a lack of "proper notice and an opportunity to be heard, or any meaningful due process procedural safeguards on appeal[.]" Pet'r's Br. 6. Burdue's pending *Bivens* action also seeks damages, a remedy not authorized by § 46110. Thus, his claims may be adjudicated in a separate *Bivens* action because they fall outside the circuit-court exclusivity provision of § 46110(c) and are not otherwise an impermissible collateral attack on the merits of his termination.[5]

A contrary result would prevent meaningful review of Burdue's constitutional claims. Central to *McNary*'s reasoning is that "if not allowed to pursue their claims in the District Court, respondents would not as a practical matter be able to obtain meaningful judicial review of their application denials or of their objections to INS procedures . . . ." 498 U.S. at 496. Although courts of appeals had jurisdiction over "Special Agricultural Worker[]" application denials during deportation hearings, the lack of an adequate administrative record would stymie review:

> Initially, administrative or judicial review of an agency decision is almost always confined to the record made in the proceeding at the initial decisionmaking level, and one of the central attacks on INS procedures in this litigation is based on the claim that such procedures do not allow applicants to assemble adequate records. As the District Court found, because of the lack of recordings or transcripts of [Legalization Office ("LO")] interviews and the inadequate opportunity for SAW applicants to call witnesses or present other evidence on their behalf, the administrative appeals unit of the INS, in reviewing the decisions of LO's and

---

[4]Burdue's pending *Bivens* action seeks damages, though his complaint in this case does not.

[5]District courts have entertained *Bivens*-like claims similar to the constitutional claims Burdue raises here. *See, e.g.*, *Tamura v. FAA*, 675 F. Supp. 1221, 1224–25, 1228 (D. Haw. 1987) (denying summary judgment to the FAA on a *Bivens* claim based on the FAA's decision not to redesignate an Aviation Medical Examiner); *White v. Franklin*, 637 F. Supp. 601, 605, 613–14 (N.D. Miss. 1986) (considering a Due Process Clause claim based on the FAA's decision to terminate a flight examiner's designation).

regional processing facilities, and the courts of appeals, in reviewing SAW denials in the context of deportation proceedings, have no complete or meaningful basis upon which to review application determinations.

*Id.* at 496.

In *Crist v. Leippe*, 138 F.3d 801, 804 (9th Cir. 1998), the Ninth Circuit realized that where a challenge is "not . . . based on the merits of the appealed order . . . additional record development may be necessary." Constitutional claims dependent upon factual development should first be entertained by district courts. "[A]ppellate courts are not equipped to resolve factual issues." *United States v. Collins*, 434 F. App'x 434, 442 (6th Cir. 2011) (internal quotation marks omitted). In *Greenwood*, the court refused to address the former designee's Fifth Amendment claims because they were "not properly developed for review by this court." 28 F.3d at 978. By "not properly developed," the court meant that the administrative record was insufficient to permit "an informed judicial evaluation of the issues raised." *Id.* The claim was predicated on "evidence which will be developed later in the District Court actions." *Id.* (internal quotation marks omitted).

Whether Burdue's procedural due process rights have been violated depends on factual disputes the administrative record does not resolve. For instance, what is the nature of the Cleveland FSDO's "fast-track" employment process? Did the FAA appeal panel receive Burdue's documents in both redacted and unredacted form? Additional factfinding is necessary for us to engage in a meaningful review of Burdue's procedural due process claims. Section 46110 does not divest the district court of original jurisdiction to hear broad constitutional claims that are not inescapably intertwined with a review of the procedures and merits surrounding a particular FAA order.

## IV.

For the foregoing reasons, we deny Burdue's petition for review. We also deny as moot Burdue's motion to supplement the administrative record.